UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| HBKY, LLC, | ) |
| | ) |
| Plaintiff, | ) Civ. No. 6:21-cv-00101-GFVT-HAI |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) **&** |
| KINGDOM ENERGY RESOURCES, LLC, | ) **ORDER** |
| *et al.*, | ) |
| | ) |
| Defendants. | |

*** *** *** ***

This matter is before the Court on Plaintiff HBKY, LLC's Motion for Preliminary Injunction [R. 100.]  From a complex web of documents, HBKY asks the Court to find cause to halt Defendant JRL Coal, Inc.'s mining operation on a parcel of land allegedly subject to the conditions of a mortgage HBKY holds.  *See id.*  In response, JRL argues that a preliminary injunction is inappropriate because HBKY is unlikely to succeed on the merits of its litigation, and because a preliminary injunction would devastate its business.  [*See* R. 104-1.]  JRL is joined in opposition by Sarah Kahn, a related Defendant.  [R. 108.]  For the reasons stated below, HBKY's Motion for Preliminary Injunction [R. 100] is **DENIED**.

**I**

In 2016, Kingdom Energy and other borrowers executed a note purchase agreement with three lenders, including the Senior Health Insurance Company of Pennsylvania ("SHIP"), a predecessor company in interest to Plaintiff HBKY, LLC.  [R. 1 at ¶ 36.]  In exchange for roughly twenty-two million dollars, the borrowers encumbered certain real property, personal

property, and interests in land with mortgages established as collateral.[1]  [*Id.* at ¶ 38; R. 100-2 at 2.]  Brookside, a parcel of land owned by Kingdom, was encumbered under the "Harlan Mortgage."  [R. 100-2 at 2.]  Within the Mortgage, Kingdom agreed to various conditions that limited its ability to enter into leases, change the terms of existing leases, or act in a manner which may have lessened the value of Brookside.  [*See, e.g.*, R. 100-3 at 15, ¶ 2.14.]  But despite an abundance of language in the Mortgage governing Kingdom's leasing powers, the Mortgage failed to specify any existing lease that the terms of the Mortgage controlled.  [R. 100-3 at 73.]  Nonetheless, despite the Mortgage's lack of specificity, a group of leases HBKY alleges are subject to the conditions of the Mortgage are at the center of this action.

Prior to Kingdom's purchase of Brookside and subsequent entrance into the Mortgage, Kingdom's predecessor entered into mining leases with Moe Coal Company, LLC, Cuz Coal Company, LLC, and their contract miner JRL Coal, Inc.  [R. 100-2 at 4-5; R. 102.]  These leases governed both surface and underground mining and controlled the amount of rent and mining royalties owed to Kingdom for use of Brookside.  [*See* R. 102.]  After Kingdom purchased Brookside and entered into the Mortgage, however, extensive litigation between Kingdom and its lessees began which ultimately resulted in JRL being permitted to mine on the land and Moe and Cuz left on the leases in name only.  [*See* R. 100-2 at 6; R. 102.]  This new status quo was memorialized by way of an Amended Lease in June 2018.  *Id.*  Within the Amended Lease, JRL agreed to certain royalty conditions and agreed to payment of a $100,000 a month Advanced

---

[1] Put clearly, a promissory note is an agreement that a party owes another party money, while a mortgage is an agreement that if the party fails to pay the money it owes, the other party has a right to certain property subject to the agreement.  *See* Laura Grace Tarpley, CEPF, *A promissory note is a legal document that promises you'll repay your mortgage, and it stays with the lender until you pay it off* (Dec. 19, 2020), https://www.businessinsider.com/personal-finance/what-is-a-promissory-note.  ("A promissory note is 'a written legal document [a debtor] sign[s] to promise [it] will repay the company what it lends […],' [while] '[a] mortgage is a legal agreement about what happens should [a party] fail to pay back [its] mortgage according to the terms spelled out in the promissory note.'").

Monthly Minimum for six months, to begin in June 2018. [R. 102 at 2.] But a little over a month later, Kingdom and JRL executed a Master Amendment to the Amended Lease. [R. 100-8.] Under the Master Amendment, JRL paid Kingdom a lump sum of $350,000 and permitted Kingdom to keep $100,000 it had already paid under the Amended Lease. [R. 100-2 at 7; R. 100-8 at 2.] And in exchange for this payment, Kingdom agreed to release JRL's royalty payment obligation, "regardless of the quantity of Leased Coal removed or to be removed" from Brookside. *Id.*

Separately, in 2017, prior to the creation of the Amended Lease and Master Amendments between Kingdom and JRL, Kingdom failed to make payment on its Note and was sued in federal court in New York by HBKY's predecessors in interest. [R. 1 at 13.] On October 2, 2018, the New York court entered a Consent Judgment resolving the matter, in which Kingdom was found to be in default on its loan, was determined to have no defense to the enforceability of the loan documents, and was adjudged to owe the remainder of its debt. [*See* R. 1-9.] Soon after, the original lenders of the loans to Kingdom and other borrowers consolidated and assigned the Notes to SHIP. [*See* R. 1 at 14-16.] And, once SHIP gained control of the Notes, it established HBKY as a successor collateral agent who "succeeded [all of its] interests, rights, title, and obligation as collateral agent." [R. 1 at 16.] Explained more clearly: HBKY was created by SHIP to litigate this action and collect the debt SHIP is owed. *See id.* Accordingly, as the new collateral agent, HBKY registered the New York Consent Judgment in the Eastern District of Kentucky. [R. 100-2 at 14.]

Now, having registered its Judgment, HBKY requests the Court enjoin JRL from further mining on Brookside. In support of its request, HBKY argues that JRL is extracting wealth from Brookside without making proper payment, that its mining is decreasing the value of the

3

collateral it aims to use to satisfy Kingdom's debt, and that JRL should not be permitted to mine until the primary litigation in this matter regarding various parties' liens concludes. *See id.* at 8-9. In support of its request, HBKY makes various contractual arguments and contends that the Amended Lease and Master Amendment between JRL and Kingdom violated the terms of the Mortgage. *Id.* at 10-11. In opposition, JRL presents a litany of arguments as to why it is not bound by the terms of the Mortgage and contends that an injunction would devastate its business. [R. 104-1.] And in further opposition, related Defendant Sarah Kahn contends that HBKY may not be an entity with authority to enforce the terms of the Mortgage. [*See* R. 110.]

## II

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington–Fayette Urban County Government*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) (cleaned up) ("[A] preliminary injunction involv[es] the exercise of a very far-reaching power ....")). To issue a preliminary injunction, the Court must consider: 1) whether the movant has shown a strong likelihood of success on the merits; 2) whether the movant will suffer irreparable harm if the injunction is not issued; 3) whether the issuance of the injunction would cause substantial harm to others; and 4) whether the public interest would be served by issuing the injunction. *Overstreet*, 305 F.3d at 573.

The Sixth Circuit has clarified that, "[w]hen a party seeks a preliminary injunction on the basis of a potential constitutional violation, the likelihood of success on the merits often will be the determinative factor." *City of Pontiac Retired Employees Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (quoting *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012)).

However, even if the plaintiff is unable "to show a strong or substantial probability of ultimate success on the merits" an injunction can be issued when the plaintiff "at least shows serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if an injunction is issued." *In re Delorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985). Thus, HBKY must show that the foregoing preliminary injunction factors are met, and that immediate, irreparable harm will result if the injunction is not issued.

### A

The determinative question at this preliminary stage is "whether the movant has shown a strong likelihood of success on the merits." *Overstreet,* 305 F.3d at 573. HBKY contends that it will succeed on the merits of its litigation against JRL because its Mortgage constituted a "perfected lien on any and all royalties or other rents paid or payable on account of Brookside," which existed prior to the formation of Kingdom and JRL's Amended Lease and Master Amendment. [R. 100-2 at 10 (citing *Godley v. Kentucky Res. Corp.*, 640 F.2d 831, 835 (6th Cir. 1981) (finding an agreement to pay royalties "consideration for the use of [] property.")]. Accordingly, HBKY contends that JRL's Amended Lease and Master Amendment are "not only void or voidable, but also constitute tortious interference" with the Mortgage. [R. 100-2 at 10.] Additionally, HBKY argues that the Amended Lease and Master Amendment are "void because Moe and Cuz, the purported lessees […] were not parties […]," "because the Master Amendment does not state an intention to modify the Amended Lease," and because Kingdom Energy did not have the authority to amend or modify any lease in a material respect." *Id.* at 11.

JRL vehemently disagrees with HBKY's request, as evidenced by its drafting of an opposing brief and proposed sur-reply the length of a novella. Though the Court declines to thoroughly analyze each argument JRL presents, the gist of JRL's contention is that the

Mortgage allows amendment of existing leases, that it is unclear whether JRL's lease is bound by the terms of the Mortgage, that privity issues preclude HBKY from collecting royalty payments from JRL, that HBKY's security interest did not attach to JRL's leasehold, that Kingdom's title to Brookside is currently being litigated which makes an injunction based on Kingdom's interest in the property inappropriate, and that HBKY has waited too long to bring suit against JRL. [*See* R. 104-1 at 2-20.] And in further opposition, related Defendant Sarah Kahn contends that "HBKY has not submitted an affidavit presenting admissible evidence that it is the current holder of the mortgage on which it relies," that the record only proves that SHIP and HBKY were assigned the Notes and not the Mortgage, and that res judicata precludes HBKY from litigating the terms of the Mortgage. [*See* R. 108.]

      Upon review, the Court ultimately agrees with JRL. At this point in litigation, the web of complex documents in this matter and the impact of their interactions have not been sufficiently litigated to permit a finding of strong likelihood of success on the merits. For example, the Court is hesitant to conclude, without further discovery and briefing, that the Mortgage precluded Kingdom and JRL from amending JRL's lease when the Mortgage fails to list the JRL lease as subject to its terms. [*See* R. 100-3 at 73.] Similarly, the Court is hesitant to conclude that HBKY's interest in Brookside mandates an injunction when the validity of Kingdom's title over certain property is currently subject to litigation which could result in its title being quieted.[2] [*See* R. 110-1.] Many questions remain unanswered at this point in litigation. So, though "a

---

[2] The Court notes that the separate litigation it references is brought by a related Defendant who alleges to hold claim over the land HBKY assumes Kingdom properly held and asks whether Kingdom had the right to lease to JRL and whether JRL is properly mining on the land. [*See* R. 110-1.] HBKY contends that this case lends support to its argument that JRL is harming the value of the land, perhaps for parties other than just HBKY. [*See* R. 110 at 7-8.] But the existence of this separate litigation only serves to further muddle the issue of Kingdom's ownership of its land and ability to enter into agreements. Consequently, this litigation adds further uncertainty to HBKY's likelihood of success on the merits.

preliminary injunction motion is too early a stage of the proceedings to woodenly assess a movant's probability of success on the merits with mathematical precision," the plethora of open questions here precludes any well-reasoned finding of a strong likelihood of success on the merits. *Gen. Mills. Inc. v. Kellogg Co.*, 824 F.2d 622, 624 (8th Cir. 1987).

**B**

Based on the foregoing, the Court finds that HBKY has not established a strong likelihood of success on the merits. But even absent such a showing, the Court, in its discretion, may issue a preliminary injunction where the plaintiff "at least shows serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if an injunction is issued." *In re Delorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985). A preliminary injunction here is still inappropriate, however, because all three remaining factors weigh in favor of JRL.

First, HBKY fails to persuade the Court that any potential harm it faces could not be later rectified through money damages. In its briefing, HBKY contends that later-awarded monetary damages would not be satisfactory because "[i]nterference with the enjoyment or possession of land is considered irreparable since land is viewed as a unique commodity […]." [R. 100-2 at 12 (citing *CONRAIL. v. Michigan*, 976 F.Supp. 1085, 1089 (W.D. Mich. 1996).]. HBKY further contends that because "coal companies often file for bankruptcy when market conditions turn against them," there is no guarantee that JRL will have the ability to pay a judgment if HBKY were to receive one after the completion of this litigation. [R. 100-2 at 12.]

But, the cases HBKY cites in support of its position, like *CONRAIL*, are unpersuasive because most deal with situations in which access to the property itself is essential. *See* 976 F. Supp. at 1089 ("real property is crucial to the functioning of Plaintiff's business."). Here, HBKY

7

is not requesting unfettered access to Brookside itself but only seeks preservation of its value. Consequently, any harm to HBKY's interest in Brookside could easily be repaired through the payment of later-awarded monetary damages. And, secondly, the Court declines to accept HBKY's second argument because its unsupported contention of a future bankruptcy fails to overcome the settled concept that no irreparable harm may be found if monetary damages can later compensate a movant's injury. *Overstreet*, 305 F.3d at 578.

Additionally, factors three and four further weigh against granting an injunction. Despite HBKY's contention that "[n]o party would be harmed by the issuance of a restraining order" because "JRL […] can continue mining on [] two adjacent parcels of property," JRL contends that "[i]f the injunction is granted, its miners will be laid off and JRL will be brought "to its knees." [*Compare* R. 100-2 at 13 *with* R. 104-1 at 21-22.] And though "[s]ociety, in general, benefits from the enforcement of the categories of legal obligations underlying this dispute," the public interest in this matter is not served by the halting of a mining company, the laying off of workers, and the establishment of court-mandated conditions that render it impossible for JRL to fulfill its contracts with purchasers of coal. [R. 104-1 at 23-24; *Tempur-Pedic N. Am., LLC*, 2020 WL 9216451 at *5 (E.D. Ky. April 7, 2020).

### III

A motion for preliminary injunction asks the Court to take a preliminary review of the merits of a case. In this matter, the record is not fully developed enough for the Court to determine whether HBKY is likely to succeed on the merits. Consequently, because the remaining factors in the preliminary injunction analysis also weigh in favor of JRL, the Court **ORDERS** as follows:

1. HBKY's Motion for Preliminary Injunction [R. 100] is **DENIED**;

8

2. JRL's Motion for Leave to File Sur-Reply [R. 142] is **DENIED**;

3. JRL's Motion to Limit Discovery Responses [R. 131] is **GRANTED.**

This the 7th day of March, 2022.

Gregory F. Van Tatenhove
United States District Judge