UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| HBKY, LLC, | ) |
| | ) |
| Plaintiff, | ) Civ. No. 6:21-cv-00101-GFVT-HAI |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) **&** |
| KINGDOM ENERGY RESOURCES, LLC, | ) **ORDER** |
| *et al.*, | ) |
| | ) |
| Defendants. | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendants JRL Coal, Inc., Moe Coal Company, LLC, and Cuz Coal Company, LLC's Motion to Dismiss [R. 107.]  In its Complaint, Plaintiff HBKY, LLC asks the Court to deem certain parcels of real property identified in mortgages it controls "free and clear of all liens, encumbrances, claims, and interests […]." [R. 1 at 25.]  HBKY also requests the Court declare it to be owed rent and royalties from the Defendants who bring this Motion and to adjudicate the rights of it as a mortgage holder and Defendants as lessees under various documents related to this litigation. *Id.* at 25-30.  For the reasons stated below, Defendants' Motion to Dismiss [R. 107] is **GRANTED IN PART** and **DENIED IN PART**.

**I**

In 2016, Kingdom Energy and other borrowers executed a note purchase agreement with three lenders, including the Senior Health Insurance Company of Pennsylvania ("SHIP"), a predecessor company in interest to Plaintiff HBKY, LLC. [R. 1 at ¶ 36.]  In exchange for roughly twenty-two million dollars, the borrowers encumbered certain real property, personal property, and interests in land with mortgages established as collateral. [*Id.* at ¶ 38; R. 100-2 at

2.] Prior to Kingdom's mortgage of its property and interests, its predecessor entered into mining leases with Defendants Moe Coal Company, LLC, Cuz Coal Company, LLC, and their contract miner JRL Coal, Inc. [R. 100-2 at 4-5; R. 102.] These leases governed both surface and underground mining and controlled the amount of rent and mining royalties owed for use of the leased property. [*See* R. 102.]

After Kingdom mortgaged its property, however, extensive litigation between the company and its lessees began which ultimately resulted in JRL being permitted to mine on the land and Moe and Cuz left on the leases in name only. [*See* R. 100-2 at 6; R. 102.] This new status quo was memorialized by way of an Amended Lease in June 2018. *Id.* Within the Amended Lease, JRL agreed to certain royalty conditions and agreed to the payment of a $100,000 a month advanced monthly minimum for six months, to begin in June 2018. [R. 102 at 2.] But a little over a month later, Kingdom and JRL executed a Master Amendment to the Amended Lease. [R. 100-8.] Under the Master Amendment, JRL paid Kingdom a lump sum of $350,000 and permitted Kingdom to keep $100,000 it had already paid under the Amended Lease. [R. 100-2 at 7; R. 100-8 at 2.] And in exchange for this payment, Kingdom agreed to release JRL's royalty payment obligation, "regardless of the quantity of Leased Coal removed or to be removed" from the leased property. *Id.*

Separately, in 2017, prior to the creation of the Amended Lease and Master Amendments between Kingdom and JRL, Kingdom failed to make payment on its Note and was sued in federal court in New York by HBKY's predecessors in interest. [R. 1 at 13.] On October 2, 2018, the New York court entered a Consent Judgment resolving the matter, in which Kingdom was found to be in default on its loan, was determined to have no defense to the enforceability of the loan documents, and was adjudged to owe the remainder of its debt. [*See* R. 1-9.] Soon

after, the original lenders of the loans to Kingdom and other borrowers consolidated and assigned the Notes to SHIP. [*See* R. 1 at 14-16.] And, once SHIP gained control of the Notes, it established HBKY as a successor collateral agent who "succeeded [all of its] interests, rights, title, and obligation as collateral agent." [R. 1 at 16.] Explained more clearly: HBKY was created by SHIP to litigate this action and collect the debt SHIP is owed. *See id.* Accordingly, as the new collateral agent, HBKY registered the New York Consent Judgment in the Eastern District of Kentucky. [R. 100-2 at 14.]

Now, having registered its Judgment, HBKY asks the Court to deem certain parcels of real property identified in the mortgages it controls "free and clear of all liens, encumbrances, claims, and interests […]." [R. 1 at 25.] HBKY also requests the Court declare it to be owed direct rent and royalty payments from Defendants Moe, Cuz, and JRL, and to adjudicate both its rights as mortgage holder and Defendants' rights as lessees under various documents. *Id.* at 25-30. In opposition, Defendants move for their dismissal from this matter by arguing that HBKY has failed to state a claim against them under Federal Rule of Civil Procedure 12(b)(6). [R. 107.]

II

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a plaintiff's complaint. In reviewing a Rule 12(b)(6) motion, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The Court, however, "need not accept as true legal conclusions or unwarranted factual inference." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)).

The Supreme Court has explained that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). *See also Courie v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 629 (6th Cir. 2009). Otherwise stated, it is not enough for a claim to be merely possible; it must also be "plausible." *See Courie*, 577 F.3d at 630. According to the Court, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Moreover, under limited circumstances, a claim may be rendered plausible if a plaintiff pleads its "information and belief" with supporting facts. *See Modern Holdings v. Corning Incorporated*, 2015 U.S. Dist. LEXIS 41134 at *12 (E.D. Ky. 2015) ("[w]hile pleading on information and belief cannot insulate a plaintiff at the 12(b)(6) stage, *Iqbal* did not render pleading on information entirely ineffectual"); *e.g.*, *Arista Records, LLC v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010) ("[t]he *Twombly* plausibility standard, which applies to all civil actions, does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant . . .")).

**A**

HBKY's first count against Defendants Moe, Cuz, and JRL requests "enforcement of liens on collateral." [R. 1 at 18.] Though HBKY fails to cite the legal authority on which it requests enforcement, the Court surmises its claim to be made pursuant to KRS § 426.006. Section 426.006 describes the process that those who seek to enforce a lien on property in Kentucky must follow:

> The plaintiff in an action for enforcing a lien on property shall state in his petition the liens held thereon by others, making them defendants; and may ask for and obtain a judgment for a sale of the property to satisfy all of said liens which are shown to exist, though the defendants fail to assert their claims. Such defendants

4

> shall not, however, be allowed to withdraw or receive any of the proceeds of such sale, until they have shown their right thereto by answer and cross claim, which shall be asserted as provided in the Rules of Civil Procedure.

KRS § 426.006. Pursuant to Section 426.006, HBKY has made Moe, Cuz, and JRL defendants in its foreclosure action, and the companies, in turn, have answered and filed cross claims asserting their rights to the subject property. [R. 1 at 18, 24; R. 36.] Defendants have therefore preserved their interest in the subject property. [R. 36.] Consequently, HBKY seeks an adjudication that its mortgage interest is superior and prior to any interest in the subject property preserved by the Defendants. [R. 1 at 25 ("[s]aid sale shall be free and clear of all liens, encumbrances, claim and interests […].")]; *see also Rogan v. Vanderbilt Mortg. & Fin., Inc.*, 491 B.R. 464, 475 (Bankr. E.D. Ky. May 6, 2013) ("[t]he judicial lien creditor brings a foreclosure suit naming all parties in the chain of title, including potentially senior liens holders. Each defendant must come forward and prove its position or the party will not share in any sale proceeds.").

In support of dismissal, Defendants argue that their leases "clearly […] predate the Mortgage" and that HBKY "acknowledges that the recording of the Moe Coal Lease and Cuz Coal Lease in 2012 places its predecessors on notice of the leases prior to the Loan Documents." [R. 107 at 5.] Accordingly, Defendants contend that "the property subject to [their] leases cannot be sold 'free and clear' of the interests created by the [l]eases" as a matter of law. *Id.* (citing *Charles White Co. v. Percy Galbreath & Sons Inc.*, 563 S.W.2d 478, 481 (Ky. App. 1978)) ("As a practical matter, regardless of whether rents have been assigned, a leasehold as security cannot be separated from the property for the purposes of marshalling assets."). In opposition, HBKY does not contest whether Defendants' leases predated its mortgage or whether the leases were recorded properly to have established priority. Instead, HBKY argues that Defendants' priority

5

argument is an improper request for summary judgment, not dismissal. [R. 115 at 5.] HBKY also argues that because the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all inferences in favor of the plaintiff" at the motion to dismiss stage, it must accept the following relevant "facts" it has pled as true and find dismissal inappropriate:

1. The Harlan Mortgage is a valid lien entitled to priority over all other liens, claims, and encumbrances and created a lien against all Leases and Rents, whether in existence at the time of execution or thereafter, related to the underlying property.

2. Kingdom Energy may have terminated the Coal Leases that predate the Harlan Mortgage.

[R. 115 at 5; R. 1 at ¶¶ 79, 118-128; *DirecTV, Inc.*, 487 F.3d at 476.]

By reply, Defendants argue that the Court need not accept HBKY's referenced "facts" as true because the "facts" are actually legal conclusions. [R. 123 at 1 (citing *Red Hed Oil, Inc. v. H.T. Hackney Co.*, 292 F. Supp. 3d 764, 772 (E.D. Ky. Nov. 14, 2017)) ("Although a court must accept as true all well-pleaded factual allegations, they need not accept legal conclusions as true.") (citing *Twombly*, 550 U.S. at 555)]. In support, Defendants first contend that Kentucky is a race-notice state, which renders any determination of priority inherently a "legal" question that can be appropriately decided at the motion to dismiss stage—meaning that the Court cannot simply accept as true that HBKY's mortgage is valid and is entitled to priority over all other liens, claims, and encumbrances. [*See* R. 123 at 2.]

Defendants next argue that the Court should not give weight to HBKY's pled "fact" that Kingdom Energy may have terminated the Defendants leases before the mortgage was created (and therefore Defendants have no interest in the subject property) because it also pled that the dispute between Kingdom and Defendants regarding whether the leases "were in default and

6

were terminated prior to 2018" was settled with the leases remaining intact. [*See Id.* at 4-5; R. 1 at 28.] Further, Defendants argue that Count II and IV of HBKY's Complaint are inconsistent with HBKY's contention that the Defendants' leases may have been terminated prior to 2018. *Id.* Under Count II, HBKY requests an adjudication that its lien against the leased collateral is valid and includes entitlement to Defendants' rent and royalty payments. [R. 1 at 25.] Similarly, Count IV requests a declaration that the Defendants' amendments to their leases are invalid. *Id.* at 26-30. Because HBKY's request for adjudication of Counts II and IV seemingly presumes the existence of valid leases, Defendants contend that HBKY argument that the leases may be invalid is implausible. [*See* R. 107 at 3-4.]

The Court agrees with HBKY because the Court must accept as true HBKY's contention that Defendants' leases may have been terminated before 2018 and therefore may no longer remain an interest that burdens the subject property. Though HBKY's first pled "fact" that its lien is valid and holds priority over all other liens, claims, and encumbrances is not entitled to an assumption of truth because it is a legal conclusion, its second relevant pled fact controls at this stage. *Twombly*, 550 U.S. at 555. Under its second pled fact, HBKY contends that Defendants' leases may have been terminated prior to the creation of its mortgage. [R. 1 at ¶ 121-128.] And, though HBKY pled that the issue of whether the leases were terminated had been purportedly settled and resulted in the creation of an amended lease between the mortgagor and Defendants, it also pled that the settlement agreement and amended lease were made without its authorization or consent. [*Compare id.* at ¶ 121-124 *with* ¶ 128.]

Accordingly, at this stage, HBKY has plausibly pled that, because it did not consent or authorize the settlement agreement or amended leases, Defendants' leases may be invalid and Defendants may therefore hold no valid interest in the subject property. As a result, the Court

7

cannot decisively determine as a matter of law, at this stage, whether Defendants' interest in the property is superior to and holds priority over HBKY's mortgage. Consequently, Defendants' request to dismiss Count I is denied.

**B**

Count II of HBKY's Complaint requests an "adjudication of the lien and surrender of collateral that is personal property." [R. 1 at 25.] The Security Agreement between Kingdom and HBKY lists, among other things, Kingdom's intangible property including "rents, profits, income, benefits [….]" as collateral. [R. 1-7 at 8; R. 1 at ¶ 105.] Defendants presume the collateral to include their rent and royalty obligations as Kingdom's lessee. [*See* R. 107 at 6-7.] In their Motion to Dismiss, Defendants allege that HBKY is not entitled to their rents and royalties because its security interest in those payments is not perfected. Defendants present three theories of insufficient perfection in support.[1]

Defendants first contend that HBKY has not perfected its security interest because it does not allege that it has filed a UCC-1 financing statement in Kentucky in the name of Kingdom. [*See* R. 107 at 13 (citing KRS. § 355.9-108(1)).] In support, Defendants describe the statutory requirements around UCC-1 financing statements and the identification of security interests and argue that, because HBKY has failed to satisfy these requirements, its security interest in their

---

[1] Alongside their three theories of insufficient perfection, Defendants separately contend that HBKY fails to sufficiently plead that it has a valid interest in their rent and royalty obligations because, though it pleads that Kingdom granted it an interest in "the extraction of any coal by highwall miner," it fails to separately plead that Defendants were engaged in highwall mining. [R. 1 at 27; R. 107 at 7.] But this argument is unpersuasive because, as an attachment to its Complaint, HBKY provides its Security Agreement with Kingdom. [R. 1-7.] The Security Agreement indicates that HBKY holds as collateral to its mortgage Kingdom's "interests in real property, […] rents, profits, income [….]." [R. 1-7 at 7.] Although it is an open question whether this Agreement properly established a security interest in Defendants' rent and royalty obligations considering other relevant documents, HBKY's attachment of the Agreement is sufficient to preclude dismissal under this theory.

8

rent and royalty payments is not perfected. [*See* R. 107 at 13-14.] In opposition, HBKY argues that "Kentucky law is clear that coal leases are generally considered conveyances of interests in land, and the Uniform Commercial Code is clear that interests in land, like leases or rents, are outside of its scope." [R. 115 at 5 (citing *In re Becknell & Crace Coal Co.*, 761 F.2d 319, 321 (6th Cir. 1985) (quoting *Johnson v. Coleman*, 288 S.W.2d 348, 349 (Ky. 1956)).] Consequently, HBKY contends that is irrelevant whether it has filed a UCC-1 financing statement describing its security interests in the rents and royalties owed by the Defendants to Kingdom. *See id.*

HBKY is correct. "[W]hat is commonly termed a coal mining lease [under Kentucky law] is regarded as the conveyance of an estate or interest in the minerals as land unless the terms of the instrument require a different construction." *Johnson*, 288 S.W.2d at 349. And, per KRS § 355.9-109(4)(k), "[t]he creation or transfer in or lien on real property, including a lease or rents thereunder […]" falls outside of the scope of the UCC. KRS § 355.9-109(4)(k). Accordingly, Defendants' argument that HBKY's security interest is not yet perfected because it has not yet satisfied UCC requirements is incorrect.[2]

Second, Defendants contend that HBKY's security interest has not been perfected because their leases were filed before HBKY's mortgage and "the recording of [HBKY's] [m]ortgage several years later did not serve to give [them] notice of its interest." [R. 107 at 6.] Defendants also contend that, even if they were on notice of HBKY's interest in Kingdom's personal property, they are "not bound by the language contained in the Mortgage" between Kingdom and HBKY because no privity of contract is present and that HBKY has therefore failed to state a claim against them. *Id.* at 12. In support, Defendants cite *Gulf Life Ins. Co. v.*

---

[2] The Court notes that KRS § 355.9-109(4)(k) provides three exceptions as to when a UCC-1 form must be recorded, even when the subject of a lien or transfer is real property. But Defendants, by reply, do not argue that these exceptions are relevant.

9

*Wal-Mart Stores*, 972 F. Supp. 575 (M.D. Al. 1997). In *Gulf Life Ins.*, the court held that a mortgagee could not require the lessor of a defaulting mortgagor to pay it rent directly until it took "further action to enforce its rights against the mortgagor and its successors," like "foreclosure, sequestration of rents, or by having a receiver appointed to collect the rents." *Gulf Life Ins.*, 972 F. Supp. at 588, n. 23 (quoting *Turtle Creek*, 194 B.R. 267 (N.D. Al. 1996)).

Here, despite HBKY having filed a foreclosure action, Defendants argue that *Gulf Life Ins.* suggests dismissal is appropriate because HBKY has failed to perfect its security interest. Despit HBKY's failure to respond to this argument, it is evident that the Defendants' reliance on *Gulf Life. Ins.* is misguided because *Gulf Life Ins.* is both a case vacated by the Eleventh Circuit and one that specifically interprets Alabama law. Defendants also fail to explain how a lack of notice precludes the perfection of a security interest in their rent and royalty obligations. As a result, Defendants' second set of arguments around notice, privity of contract, and perfection are unpersuasive.

But Defendants' final argument on perfection warrants the dismissal of Count II. Defendants contend that HBKY has failed to perfect its security interest in the rent and royalties they owe to Kingdom because Kentucky requires a mortgagee to either take possession of the subject real property or to appoint a receiver to perfect its claim on the rents and profits derived from land. [*See* R. 107 at 8-10.] In support, Defendants first cite *In re Buttermilk Towne Ctr*, 428 B.R. 700 (Bankr. E.D. Ky. May 17, 2010). The *Buttermilk* court, in reliance on Sixth Circuit precedent, indicated as follows:

> In Kentucky, it has been declared that the entire tenor and affect of an instrument pledging rents, issues and profits in addition to the real estate mortgaged is that such a pledge is deemed a secondary security, with the lien continuing as an inchoate right which will be and must be perfected or consummated by asserting the right by some definite action looking toward possession and subjection. Such

10

> definite action must be taken in some lawful manner, which … is by asking the court to have a receiver take control for the pledgee's benefit.

*Buttermilk*, 428 B.R. at 707 (citing *In re American Fuel & Power Co.*, 151 F.2d 470, 481 (6th Cir. 1945)). Accordingly, though HBKY's mortgage includes an assignment of interest clause regarding the rents and royalties, and the purpose of the clause was to ensure that the rent and royalties acted as collateral security, Defendants contend that HBKY's interest in their rent and royalty payments must be perfected by either possession of the land or the appointment of a receiver before HBKY has a controlling interest in their rent and royalty payments. [*See* R. 107 at 7-9.] And, because HBKY is not currently in possession of the subject property and its Complaint "does not ask the Court to place [it] in possession of the collateral" but instead only seeks the "foreclosure of the Mortgage through a sale of the real property," Defendants contend that HBKY is not yet entitled to receive their rent and royalty payments. *See id.*

Though HBKY does not respond to this argument, it does "incorporate by reference" its prior argument in opposition to this claim made during the briefing on its earlier Motion for Preliminary Injunction. [R. 110; R. 115 at 4.] In its earlier briefing, HBKY contended that it need not be in physical possession of the subject property to collect on its security interest in Defendants' rents and royalties because the mortgage itself indicated that the "Agent shall be entitled to collect [….]" if the mortgagee were to default. [R. 110 at 4-5.] Consequently, HBKY argued that "[u]nder the [] Mortgage and applicable law, Plaintiff can enforce its lien on rents from a property subject to an assignment of rents and leases by demanding that the rents be paid to it. This is the course of action that the Plaintiff is pursuing." *Id.* at 5-6.

Defendants are correct. Despite HBKY's contention otherwise, it must take action to attain possession of those profits and rents—generally accomplished by either taking physical possession of the land from which rent and royalties are derived or by appointing a receiver to

11

collect payments. As the Eastern District of Kentucky Bankruptcy Court explained in *In re Hamilton*:

> A mortgagee is generally regarded under state law as having no claim to cash proceeds until it takes possession of the premises which generate the proceeds. Specific assignments of cash revenues are not looked upon with favor by the courts, and these provisions are construed to refer to profits accruing after entry. In cases upholding such clauses, the courts have required some action by the mortgagee to reduce the rents and profits to possession, such as physical entry or appointment of a receiver to collect rents and manage property. These courts view the right to income as an incident of possession, so that an assignment of rents and profits does not become activated until possession.

1990 Bankr. LEXIS 2992 at *4 (Bankr. E.D. Ky. May 30, 1990) (internal citations omitted). Because HBKY has failed to plead that it has taken appropriate action to perfect its security interest in the rents and royalties due from the Defendants, aside from its unsupported claim that "demanding" payments constitutes sufficient action, it has failed to state a claim upon which relief may be granted. Consequently, while the Court will dismiss Count II as to Moe, Cuz, and JRL, it will do so without prejudice as to preserve HBKY's potential future right to pursue the collection of rent and royalties.

## C

HBKY's fourth count requests a declaratory judgment against JRL that the amendments to its lease with Kingdom were impermissible and are therefore void. Count IV also requests an accounting of "not only all coal mined from, or transported across the Collateral from adjoining parcels, but also an accounting of all amounts paid to purchase the coal mined from the Collateral from 2012 to present." [R. 1 at 26-30.] Generally, HBKY contends that its Mortgage with Kingdom precluded the kinds of amendments Kingdom and JRL made to their leasing agreement. Consequently, its Complaint seeks an adjudication of the rights of the parties. *See*

*id.* In support of dismissal, JRL argue that HBKY cannot seek to amend or void its leasing contract with Kingdom because HBKY is not in privity of contract with it. [R. 107 at 15.]

JRL states that "[t]here is no authority for the proposition that [HBKY] can reform a contract to which it is not a party or in privity to a party. Moreover, [HBKY] has made no allegation that it extended privity to Moe, Cuz, or JRL through a subordination, non-disturbance, or attornment agreement." *Id.* In response, HBKY first contends, once more, that the Court must accept as true certain facts and that these pled facts are sufficient to withstanding a Rule 12(b)(6) motion:

> 3. Kingdom Energy had no authority or ability to execute the Amended Coal Lease, Settlement Agreement, and Master Amendment under the Harlan Mortgage;
>
> 4. JRL had not only constructive knowledge, but also actual knowledge of the terms of the Harlan Mortgage that barred Kingdom Energy from executing the Amended Coal Lease, Settlement Agreement, and Master Agreement.

[R. 1 at ¶¶ 129-130.] And next, though once more not in its response, HBKY "incorporates by reference" its earlier argument that there are "many equitable causes of action that permit credits to void transactions [] between a debtor and third party []" like KRS § 378A.010, and that its claim should therefore survive dismissal. [R. 115 at 4; R. 100 at 7.]

JRL is again correct. As discussed previously, the Court need not accept as true legal conclusions proffered by a plaintiff. *DirecTV, Inc.*, 487 F.3d at 476. And both Kingdom's ability to execute amendments and whether JRL had constructive or actual knowledge of the terms of HBKY's Mortgage with Kingdom are legal conclusions which hold no weight at the motion to dismiss stage. HBKY's second contention is equally unpersuasive. Only the immediate parties or those standing in privity with them may reform a contract. *A.H. Thompson Co. v. Security Ins. Co.*, 252 Ky. 427, 432 (Ky. 1933). Here, HBKY does not contest that it is not in privity with JRL. Instead, it only argues that the potential applicability of a set of non-pled

equitable causes of action precludes dismissal. [*See* R. 115 at 4.] Though it may be true that equitable causes of action exist which permit third parties to litigate against a party with whom they are not in privity, HBKY's simple assertion that those claims may exist is insufficient to preclude dismissal of Count IV. Accordingly, the Court will dismiss Count IV against JRL.

### III

The Court has determined that HBKY has neither perfected its lien against Defendants' rent and royalty obligations nor is in privity of contract with Defendant JRL. This leaves pending only Count I against Defendants Moe, Cuz, and JRL.[3] Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendants' Motion to Dismiss [R. 107] is **GRANTED IN PART and DENIED IN PART**;

2. Count II of HBKY's Complaint against Defendants Moe, Cuz, and JRL is **DENIED WITHOUT PREJUDICE**;

3. Count IV of HBKY's Complaint against Defendant JRL is **DISMISSED**.

This the 21st day of June, 2022.



Gregory F. Van Tatenhove
United States District Judge

---

[3] The Court finally notes that, by reply, the Defendants contest the validity of HBKY's standing to bring this action. But this argument was not adequately briefed in their Motion to Dismiss, Defendants did not sufficiently incorporate by reference any previously briefed argument, and the Court declines to analyze an argument brought for the first time by reply. *See Barany-Snyder v. Weiner*, 539 F.3d 327, 331-32 (6th Cir. 2008).