UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| HBKY, LLC, ) | |
| ) | |
| Plaintiff, ) | Civ. No. 6:21-cv-00101-GFVT-HAI |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | **&** |
| KINGDOM ENERGY RESOURCES, LLC, ) | **ORDER** |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Plaintiff HBKY, LLC's Motion for Partial Summary Judgment [R. 147.] In its Complaint, HBKY asks the Court to deem certain parcels of real property identified in mortgages it controls "free and clear of all liens, encumbrances, claims, and interests […]." [R. 1 at 25.] It also requests an adjudication of its lien against certain Defendants' personal property pledged as collateral, the surrender of that personal property, and the reformation of descriptions of the property at issue as found in certain documents relevant to this matter. [R. 1 at 24-26.] Though its Motion was filed against four sets of Defendants, only one set, Robin T. Wilson and Elk River Export, LLC, responded in opposition. [R. 154.] For the reasons stated below, HBKY's Motion for Partial Summary Judgment [R. 147] is **GRANTED IN PART** and **DENIED IN PART**.

I

In May 2016, Defendant Kingdom Energy Resources, LLC entered into its first Timber Sale Contract with Defendant Elk River Export, LLC. [R. 154-3.] Under the Contract, Kingdom agreed to sell all the timber on its property to Elk River in exchange for a sum certain

and for a promise of the payment of future royalties from Elk River derived from its harvesting, processing, and sale of the timber. *Id.* Though the first agreement was created in 2016, the terms of the parties' Timber Sale Contract were renegotiated three times between 2016 and 2017. [R. 154-3, 4, 5, 6; R. 159 at 5.]

Also in 2016, Kingdom and other borrowers executed a note purchase agreement with three lenders, including the Senior Health Insurance Company of Pennsylvania, a predecessor company in interest to HBKY. [R. 1 at ¶ 36.] In exchange for roughly twenty-two million dollars, the borrowers encumbered certain real property, personal property, and interests in land with mortgages established as collateral. [*Id.* at ¶ 38; R. 100-2 at 2.] Relevant to this matter, Kingdom included in its pledged collateral its interest in Elk River's promised royalty payments. [R. 154-2.] Though SHIP was on notice that Kingdom did not own the timber on its land, its mortgage agreement still indicated that Kingdom had pledged its timber, both currently possessed and after acquired, as collateral to its mortgage.[1] [*See* R. 1-1 at 6.]

But in 2017, Kingdom failed to make payment on its Note and was sued in federal court in New York by HBKY's predecessors in interest. [R. 1 at 13.] In 2018, the New York court entered a Consent Judgment resolving the matter, in which Kingdom was found to be in default on its loan, was determined to have no defense to the enforceability of the loan documents, and was adjudged to owe the remainder of its debt. [*See* R. 1-9.] Soon after, the original lenders of the loans to Kingdom and other borrowers consolidated and assigned all of the Notes to SHIP. [*See* R. 1 at 14-16.] And, once SHIP gained control of the Notes, it established HBKY as a successor collateral agent who "succeeded [all of its] interests, rights, title, and obligation as

---

[1] "Plaintiff has conceded, for the purpose of its Motion, that it knew of a logging agreement between Elk River and Kingdom Energy before its mortgages were recorded." [R. 159 at 6.]

collateral agent." [R. 1 at 16.] Explained more clearly: HBKY was created by SHIP to litigate this action and collect the debt SHIP is owed. *See id.* Accordingly, as the new collateral agent, HBKY registered the New York Consent Judgment in the Eastern District of Kentucky. [R. 100-2 at 14.]

Now, having registered its Judgment, HBKY asks the Court to grant it partial summary judgment and deem certain parcels of real property identified in the mortgages it controls "free and clear of all liens, encumbrances, claims, and interests […]." [R. 1 at 25; R. 147.] It also requests an adjudication of its lien against certain Defendants' personal property pledged as collateral, the surrender of that personal property, and the reformation of relevant documents that describe the collateral property at issue to ensure the descriptions are accurate. [R. 1 at 24-26.] Though HBKY seeks partial summary judgment against Defendants Elk River and Robin T. Wilson, Todd Delph d/b/a Southeast Construction and Welding, BPM Lumber, LLC, Columbia Plywood Corporation, Whitley Davis, and Sarah Kahn, only Elk River and Robin T. Wilson have responded in opposition.[2] [R. 147 at 1; R. 154.]

Specifically regarding Elk River, HBKY asks the Court to deem its interest in the timber on Kingdom's property superior and prior to Elk River's interest. [R. 147 at 7-12.] In support, HBKY argues that Elk River's Timber Sale Contract was novated multiple times by its renegotiations with Kingdom, and that, accordingly, Elk River's final, binding contract was entered into later in time than HBKY's mortgage. *Id.* In opposition, Elk River argues that its original contract was not novated, that HBKY should not be entitled to the timber on Kingdom's land when it was aware that Kingdom had sold its timber before it mortgaged the land, and that

---

[2] HBKY and Defendant Sarah Kahn have resolved their claims by separate agreement. [R. 173.] Accordingly, to the extent HBKY's Motion [R. 147] seeks summary judgment against her, it is **DENIED AS MOOT**.

HBKY's request for summary judgment is premature. [R. 154.] This matter is now ripe for review.

## II

Summary judgment is appropriate when the pleadings, discovery materials, and other documents in the record show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corp. of the Pres. of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating there is a genuine issue in dispute. *Hall Holding*, 285 F.3d at 424 (citing *Celotex Corp.*, 477 U.S. at 324).

The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). In doing so, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001). Summary judgment is inappropriate where there is a genuine

conflict "in the evidence, with affirmative support on both sides, and where the question is which witness to believe." *Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013).

### A

By its first count, HBKY asks the Court to grant it partial summary judgment against the four sets of Defendants and to deem certain parcels of real property identified in the mortgages it controls "free and clear of all liens, encumbrances, claims, and interests […]." [R. 1 at 25; R. 147.] Though HBKY fails to cite the legal authority on which it requests enforcement, the Court surmises its claim to be made pursuant to KRS § 426.006. Section 426.006 describes the process that those who seek to enforce a lien on property in Kentucky must follow:

> The plaintiff in an action for enforcing a lien on property shall state in his petition the liens held thereon by others, making them defendants; and may ask for and obtain a judgment for a sale of the property to satisfy all of said liens which are shown to exist, though the defendants fail to assert their claims. Such defendants shall not, however, be allowed to withdraw or receive any of the proceeds of such sale, until they have shown their right thereto by answer and cross claim, which shall be asserted as provided in the Rules of Civil Procedure.

KRS § 426.006. Pursuant to Section 426.006, HBKY has made each of the four sets of defendants identified in its request for summary judgment defendants in its foreclosure action, and the defendants in turn have answered and filed counter and cross claims asserting their rights to the subject property. [R. 1 at 5-6; R. 9; R. 13; R. 29; R. 31; R. 52; R. 53; R. 60.] Defendants have therefore preserved their interests in the subject property. *Id.* Consequently, HBKY seeks an adjudication that its mortgage interest is superior and prior to any interest in the subject property preserved by the Defendants. [R. 1 at 25 ("[s]aid sale shall be free and clear of all liens, encumbrances, claim and interests […].")]; *see also Rogan v. Vanderbilt Mortg. & Fin., Inc.*, 491 B.R. 464, 475 (Bankr. E.D. Ky. May 6, 2013) ("[t]he judicial lien creditor brings a foreclosure suit naming all parties in the chain of title, including potentially senior liens holders. Each

defendant must come forward and prove its position or the party will not share in any sale proceeds.").

1

As an initial matter, HBKY seeks summary judgment in favor of the superiority of its lien against the interests of Defendants Todd Delph d/b/a Southeast Construction and Welding, BPM Lumber, LLC, Columbia Plywood Corporation, and Whitley Davis. [R. 147 at 12-14.] In support, HBKY alleges as follows: that its mortgage was recorded five years before Mr. Delph's judgment lien, that its mortgage was filed four years before BPM and Columbia's judgment liens, and that its mortgage was filed two years before Mr. Davis's judgment lien. *Id.* Because the above referenced Defendants have not filed a response in opposition to HBKY's request, the Court finds HBKY's lien superior and prior, and grants summary judgment in its favor.

2

HBKY similarly seeks summary judgment in favor of the superiority of its lien against the interests of Elk River and Robin T. Wilson, the President CEO of Elk River. [R. 147 at 7-12; R. 154-6 at 7.] Specifically, HBKY seeks an adjudicative finding that its interest in the timber on Kingdom's mortgaged properties is superior and prior to Elk River's purchase of the timber. Though Elk River's original purchase of the timber pre-dated HBKY's mortgage interest, HBKY argues that its interest is superior because Elk River novated its Timber Sale Contract with Kingdom multiple times, the last of which occurred in 2017, a year after HBKY's mortgage was filed. [R. 147 at 7-12.] And in support of its argument that Elk River novated its earlier-filed contracts by its 2017 agreement, HBKY points to the presence of an integration clause in the 2017 agreement and the alteration of important terms like the purchase price of the timber, the length of time the agreements were to extend, and descriptions of the property encompassed by

6

the agreements. [R. 147 at 8-9; R. 159 at 5-6.]

In response, Elk River first argues that its interest is superior to HBKY's because its later-dated contracts were amendments to its original Timber Sale Contract and the original Contract was not novated. Elk River also argues that HBKY only holds an interest in royalty payments derived from the timber on Kingdom's land, not in the timber itself, and that HBKY has moved for summary judgment prematurely. [R. 154.] In support of its first argument, Elk River argues that its interest in Kingdom's timber was properly recorded and perfected and that its interest is therefore superior to HBKY's. *Id.* at 8. Regarding HBKY's argument that Elk River novated its original contract and therefore shifted its place in the line of priority, Elk River argues that its subsequent agreements were amendments, not new agreements, and that "nowhere in the amended Timber Sale Contracts do Elk River or Kingdom express an intent to negate Kingdom's sale to Elk River, Elk River's purchase of the timber or Elk River's priority claim in the timber […]." *Id.* at 9.

Upon review, the Court finds Elk River's original Timber Sale Contract to have been novated by its later agreements. "A novation is the substitution of a new obligation for an old one, with intent to extinguish the old one […]." *M.A. Walker Co. v. Pbk Bank*, 95 S.W.3d 70, 76 (Ky. Ct. App. 2002). "If the new contract in express terms rescinds the old one, no question can be asked [of intent to novate]; yet the same result follows, as a necessary implication, and takes place by operation of law, without any express agreement to that effect whenever the new contract is manifestly in place of or inconsistent with a former one, or which renders a former contract impossible of performance." *White/Reach Brannon Rd., LLC v. Rite Aid of Ky., Inc.*, 488 S.W.3d 631, 636-37 (Ky. Ct. App. 2016). "The burden to establish novation is on the party claiming its occurrence." *Wells Fargo Fin. Ky., Inc. v. Thomer*, 315 S.W.3d 335, 339 (Ky. Ct.

App. 2010) (internal citations omitted). Though Elk River and Kingdom renegotiated the terms of the timber sale three times, the Court need only compare the original 2016 Timber Sales Contract with the final 2017 Timber Sales Contract to determine whether the earlier contract was novated by the latter.

Under the 2016 original Contract, Elk River agreed to purchase the timber on Kingdom's Brookside and Left Fork Properties for an initial payment of $200,000, to be followed by a payment of $400,000. [R. 154-3 at 1-2.] This agreement was set to last for ten years and also provided a schedule of stumpage unit prices. *Id.* at 1, 19. In comparison, the 2017 final agreement provided that Elk River was to purchase the timber on Kingdom's Brookside, Left Fork, and Pathfork Properties for an advance payment of $100,000 and a prior payment of $250,000. [R. 154-6 at 1-2.] Further, the 2017 final agreement was set to last for seven years with a right to extend for three additional years and included a schedule of "split of proceeds" in place of its predecessor's stumpage unit price schedule. *Id.* at 2, 24. Finally, the 2017 final agreement expressly indicated that the agreement was the "entire contract" and provided: "any previous communications or agreements pertaining to [the Contract] are hereby superseded. Any amendments to [the Contract] shall be in writing, signed and dated by both parties." *Id.* at 1. Accordingly, the two contracts contain inconsistent purchase prices, subject properties, governing periods, and attached schedules.

While Elk River contends that these inconsistencies are amendments to the original contract, both HBKY and the Court disagree. "An amendment is that which alters by modification, deletion, or addition." *J.C.B. Sales Ltd. v. Wallenius Lines*, 124 F.3d 132, 136 (2d. Cir. 1997) (internal citations omitted). For example, at least one Kentucky court has found an "an extension of additional credit under an existing obligation" to constitute an amendment. *See*

8

*Wells Fargo*, 315 S.W.3d at 339. But a novation occurs, conversely, when the terms of a contract are modified with the intent to replace the original contract. And intent to novate can be established either expressly or impliedly. *White/Reach Brannon Rd.,* 488 S.W.3d at 636-37. In this matter, the changes made to the original agreement were substantive and drastically altered the obligations and rights of the parties. Accordingly, an intention to novate may be easily inferred. *Id.* But even if the final 2017 agreement was not "manifestly in place of or inconsistent with" the 2016 original agreement, the final 2017 agreement expressly provides that any earlier agreement had been superseded. [*Id*; R. 154-6 at 1.] As a result, the Court concludes that the final agreement substituted the parties' older obligations, was intended to extinguish the prior agreement, and constitutes a novation. *M.A. Walker Co.* 95 S.W.3d at 76. Consequently, because Elk River's 2016 original agreement was legally terminated by its 2017 novation, HBKY's mortgage interest in the timber on Kingdom's properties appears to be superior and prior to Elk River's.

But, despite having found the original Timber Sale Contract between Kingdom and Elk River novated, the Court declines to grant pre-discovery summary judgment in favor of HBKY for several reasons. First, the Court notes that the royalty collateral agreement Kingdom and HBKY explicitly provided that HBKY's collateral interest was subordinate to the "Timber Sale Contract." [R. 154-2 at 2.] Elk River contends that "Timber Sale Contract" can be read to mean any contract, whether original or later formed, and that this separate agreement precludes HBKY's interest from attaining superiority. HBKY fails to brief this argument in opposition. Similarly, neither party has briefed whether HBKY was legally permitted to take as collateral the timber on Kingdom's property, either currently owned or after acquired, when all parties were on notice that Kingdom did not own its timber in 2016. Accordingly, these issues, unbriefed and

9

left open, constitute genuine issues of material fact and preclude the Court from granting HBKY pre-discovery summary judgment as to its first count against Defendants Elk River and Robin T. Wilson.

**B**

HBKY also moves for summary judgment against each of the four sets of Defendants as to Count Two and Count Three of its Complaint. [R. 147 at 18-19.] Under Count Two, HBKY seeks "an adjudication of the priority and validity of Plaintiff's liens on the personal property of the Borrowers and an order directing the turnover of any such property to the Plaintiff." *Id.* at 18. HBKY notes that the four sets of Defendants identified in its Motion do not "assert[] a lien on the personal property of any of the Borrowers." *Id.* Under Count Three, HBKY "asks that the Court reform the legal descriptions of the Bell/Knox Mortgage, Bell/Harlan Mortgage, and Harlan Mortgage to exclude the legal descriptions of parcels of property that were conveyed to third parties years before Kingdom Energy took title to the real property at issue herein." *Id.* HBKY further notes that the four sets of Defendants identified in its Motion cannot "assert any interest in these parcels of property […]." *Id.* Because no referenced Defendant has responded in opposition to HBKY's request for summary judgment in favor of Count Two and Three, the Court will grant its request.

**III**

The Court has determined that HBKY is entitled to summary judgment as to most of its requests under this Motion. Count One, however, remains pending against Defendants Elk River and Robin T. Wilson. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. HBKY's Motion for Partial Summary Judgment [R. 147] is **GRANTED IN PART** and

**DENIED IN PART**;

2. HBKY is **GRANTED** summary judgment under Count One of its Complaint against Defendants Todd Delph d/b/a Southeast Construction and Welding, BPM Lumber, LLC, Columbia Plywood Corporation, and Whitley Davis;

3. HBKY is **DENIED** summary judgment under Count One of its Complaint against Defendants Elk River Export, LLC and Robin T. Wilson;

4. HBKY is **GRANTED** summary judgment under Counts Two and Three of its Complaint against Defendants Todd Delph d/b/a Southeast Construction and Welding, BPM Lumber, LLC, Columbia Plywood Corporation, Whitley Davis, Elk River Export, LLC and Robin T. Wilson;

5. All counterclaims filed against HBKY in opposition to Counts One, Two, and Three by Defendants Todd Delph d/b/a Southeast Construction and Welding, BPM Lumber, LLC, Columbia Plywood Corporation, Whitley Davis are **DISMISSED**.

This the 27th day of June, 2022.

Gregory F. Van Tatenhove
United States District Judge