UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| HBKY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civ. No. 6:21-cv-00101-GFVT-HAI |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| KINGDOM ENERGY RESOURCES, LLC, | ) | **ORDER** |
| *et al.*, | ) | |
| | ) | |
| Defendants. | | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on cross motions for summary judgment by Plaintiff HBKY and Defendants Robin T. Wilson and Elk River Export. [R. 313; R. 316; R. 317.] From 2016 to 2017, Kingdom Energy Resources negotiated four contracts with Elk River allowing Elk River to harvest timber on Kingdom's land. [R. 50-1; R. 50-2; R. 50-4.] After the second timber contract, Kingdom secured a loan given by HBKY with that same timber. [R. 50-3.] Elk River and HBKY now disagree over whose interest in the timber is superior. Because HBKY holds the superior interest, its motion [R. 316; R. 317] is **GRANTED** and Elk River and Mr. Wilson's motion [R. 313] is **DENIED**.

**I**

The facts of the case are largely undisputed. In May 2016, Kingdom entered into its first timber contract with Elk River. [R. 50-1.] Under the contract, Elk River gained the right to enter Kingdom's land to cut and remove timber that it designates. *Id.* at 1. In exchange, Elk River promised to pay Kingdom $600,000 upfront for the first $600,000 it will harvest and future royalties from Elk River derived from its harvesting, processing, and sale of the timber. *Id.* at 2.

Kingdom and Elk River renegotiated the timber contract three times between 2016 and 2017. [*See* R. 316 at 4.]

After Elk River's first renegotiation, Kingdom and other borrowers executed a note purchase agreement with three lenders, including HBKY's predecessor. [R. 1 at 9.] In exchange for roughly $22 million, the borrowers encumbered certain real property, personal property, and interests in land with mortgages established as collateral. *Id.* at 9-10. At the same time, Kingdom also assigned HBKY its interest in royalty interests produced from the commodities on its properties. [R. 50-3.]

In 2017, HBKY's predecessor sued Kingdom in a New York federal court for failure to make payment on its note. [R. 1 at 13.] The New York court entered a consent judgment resolving the matter, in which the court found Kingdom to be in default on its loan, determined that Kingdom had no defense to the enforceability of the loan documents, and adjudged Kingdom to owe the remainder of its debt. [*See* R. 1-9.] After registering the Judgment, HBKY moved for this Court to enter partial summary judgment and to deem certain parcels of real property identified in the mortgages it controls "free and clear of all liens, encumbrances, claims, and interests." [R. 1 at 25; R. 147.] Specifically, HBKY asked the Court to deem its interest in the timber on Kingdom's property superior and prior to Elk River's interest. [R. 147 at 7-12.] The Court ruled that "because Elk River's 2016 original agreement was legally terminated by its 2017 novation, HBKY's mortgage interest in the timber on Kingdom's properties appears to be superior and prior to Elk River's." [R. 180 at 9.] However, the Court declined to grant summary judgment because HBKY failed to show (1) whether the HBKY's royalty collateral agreement with Kingdom subordinated its security interest and (2) whether HBKY could take an interest in

Kingdom's timber "when all parties were on notice that Kingdom did not own its timber in 2016." *Id.*

The parties learned from their prior briefings and are ready to try again. Elk River and Mr. Wilson moved for summary judgment and an order "permitting it to begin timbering." [R. 313 at 3.] HBKY renewed its motion for summary judgment on Count One and asked the Court to find "that its interest in the timber located on Kingdom's properties is superior and prior to any interest of Elk River." [R. 316 at 3; R. 317 at 3.] At their core, both motions argue that their filer holds a superior interest in the uncut timber on Kingdom's land.

II

Summary judgment is appropriate when the pleadings, discovery materials, and other documents in the record show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corp. of the Pres. of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating there is a genuine issue in dispute. *Hall Holding*, 285 F.3d at 424 (citing *Celotex Corp.*, 477 U.S. at 324).

3

The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52).  In doing so, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).  Summary judgment is inappropriate where there is a genuine conflict "in the evidence, with affirmative support on both sides, and where the question is which witness to believe." *Dawson v. Dorman*, 528 Fed. App'x 450, 452 (6th Cir. 2013).

HBKY seeks summary judgment on Count One of its complaint against Elk River and Robin T. Wilson.  [R. 316; R. 317.]  By its first count, HBKY asks the Court to grant it partial summary judgment against Elk River and Mr. Wilson and to deem certain parcels of real property identified in the mortgages it controls "free and clear of all liens, encumbrances, claims, and interests." [R. 1 at 25; R. 147.]  Though HBKY fails to cite the legal authority on which it requests enforcement, the Court surmises its claim to be made pursuant to Ky. Rev. Stat. § 426.006. Section 426.006 describes the process that those who seek to enforce a lien on property in Kentucky must follow:

> The plaintiff in an action for enforcing a lien on property shall state in his petition the liens held thereon by others, making them defendants; and may ask for and obtain a judgment for a sale of the property to satisfy all of said liens which are shown to exist, though the defendants fail to assert their claims. Such defendants shall not, however, be allowed to withdraw or receive any of the proceeds of such sale, until they have shown their right thereto by answer and cross claim, which shall be asserted as provided in the Rules of Civil Procedure.

Ky. Rev. Stat. § 426.006.  Consequently, HBKY seeks an adjudication that its mortgage interest is superior and prior to any interest in the subject property preserved by the Defendants.  [R. 1 at 25;] *see also Rogan v. Vanderbilt Mortg. & Fin., Inc.*, 491 B.R. 464, 475 (Bankr. E.D. Ky. May

4

6, 2013) ("The judicial lien creditor brings a foreclosure suit naming all parties in the chain of title, including potentially senior liens holders. Each defendant must come forward and prove its position or the party will not share in any sale proceeds.").

Elk River and Mr. Wilson seek a summary judgment determining that they may start timbering under the latest timber agreement. [R. 313 at 3.] Like HBKY, Elk River and Mr. Wilson argue that they are entitled to judgment because they hold a superior interest in the timber. *Id.*; [R. 320; R. 321.] Thus, the main issues are whether HBKY holds a security interest in the timber and, if so, whether Elk River and Mr. Wilson can harvest the timber free and clear of HBKY's security interest.

**A**

As a threshold matter, Elk River and Mr. Wilson argue that previous court decisions compel judgment in their favor. [R. 313.] Their arguments fail. First, Elk River and Mr. Wilson contend that "there is no remaining issue" and they have the right to begin timbering under a 2022 Bell County Circuit Court judgment. *Id.* at 3. Yet they provide no explanation of how the judgment demands this result. Rather, the Bell Court found that Kingdom breached its agreement with Elk River, granted Elk River judgment against Kingdom only, and ordered that Elk River and Kingdom perform the timber agreement pursuant to its terms. [R. 313-1 at 4.] The Bell judgment did not include creditors or determine the creditors' rights to the timber. *Id.* In fact, the judgment specifically mentioned this action and noted that this Court will determine the priority of interest in the timber. *Id.* at 7. Elk River and Mr. Wilson do not establish that the Bell Court demands judgment in their favor.

Second, they allege that HBKY cannot now assert a security interest in the timber because it previously "litigated or could have litigated its rights with respect to the loan

5

documents."[1] [R. 313 at 6.] Elk River and Mr. Wilson do not specify whether their argument relates to issue preclusion or claim preclusion. *Id.* Because they do not allege that priority was actually litigated, Elk River and Mr. Wilson appear to raise claim preclusion only.

Claim preclusion "bars a party from re-litigating a previously adjudicated cause of action and entirely bars a new lawsuit on the same cause of action." *Yeoman v. Commonwealth Health Pol'y Bd.*, 983 S.W.2d 459, 465 (Ky. 1998) (citations omitted). For claim preclusion to bar litigation, (1) the parties in the two cases must be identical or in privity, (2) the causes of action in the two cases must be identical, and (3) the action must have been resolved on the merits. *Id.*; *see also Heartland Materials, Inc. v. Warren Paving, Inc.*, No. 5:16-cv-00146-TBR, 2021 U.S. Dist. LEXIS 214476, at *5 (W.D. Ky. Nov. 3, 2021) (noting that federal claim preclusion doctrine requires: a final judgment on the merits in a prior action, a subsequent suit between the same parties or their privies, an issue in the second lawsuit that should have been raised in the first, and that the claims in both lawsuits arise from the same transaction).

Here, Elk River and Mr. Wilson provide only that HBKY "already litigated or could have litigated" the parties' priority dispute in HBKY's New York lawsuit against Kingdom. [R. 313 at 6.] The New York action did not include Elk River or Mr. Wilson. [R. 313-2.] And the New York action ended in a consent judgment. [*See* R. 316 at 25.] Elk River does not explain how the actions have identical parties or how the New York litigation was resolved on the merits. *Yeoman*, 983 S.W.2d at 465. Moreover, the New York case concerned only lender liability claims and did not include any dispute about the underlying collateral or priority. [*See* R. 313-2;

---

[1] Elk River and Mr. Wilson also indicate that they base their argument on HBKY "maintaining a position which is inconsistent with one in which he has acquiesced." [R. 313 at 5.] However, they fail to supply any previous position contradicting one that HBKY currently maintains.

R. 316 at 25.] Accordingly, Elk River and Mr. Wilson fail to show that claim preclusion bars HBKY's current claim.

B

HBKY asserts that it has a superior interest in the timber, thus precluding Elk River from harvesting it, because HBKY has an enforceable security interest in the timber. [R. 316 at 12.] A party creates an enforceable security interest in uncut timber when (1) value has been given for the interest, (2) the debtor has rights in the timber or the power to transfer rights in the timber, and (3) the debtor authenticated a security agreement providing a description of the timber and a description of the land concerned. Ky. Rev. Stat. § 355.9-203(2). HBKY gave value in the form of a $22,000,000 loan. [R. 316 at 13.] And Kingdom executed a security agreement that describes the timber and the land on which the timber stands. *Id.* at 5, 14; [R. 323 at 1.] Elk River and Mr. Wilson do not contest that HBKY gave value for the interest or that Kingdom authenticated a security agreement with sufficient descriptions.

Elk River and Mr. Wilson contest only that Kingdom had rights in the timber or the power to transfer rights in the timber. [R. 320 at 3. *Contra* R. 313 at 5 (arguing that "there is no genuine issue of fact that [] Kingdom owned the timber").] They argue that Kingdom had no interest in the timber at the time it executed the mortgage with HBKY because the first timber agreement "conveyed title of the timber to Elk River." [R. 320 at 3.]

However, the agreement did not transfer title of the timber to Elk River. Title to uncut timber ordinarily passes along with the land on which it stands. *See Pike v. Estate of Pike*, No. 2015-CA-001118-MR, 2017 Ky. App. Unpub. LEXIS 66, at *12 (Ky. Ct. App. Jan. 20, 2017). Courts separate standing timber from the real estate only when the timber is sold pursuant to a contract that "call for its immediate severance." *Id.*; *see also Bach v. Little*, 131 S.W. 172, 173

7

(Ky. 1910) ("[W]here the sale is made in contemplation of the timber's being cut immediately and separated from the soil, it is treated as personalty; but where it was not in the contemplation of the parties that it should be immediately cut or severed from the soil, then it is to be treated as realty."). When a contract gives a party the right to enter land and remove timber, the party "acquires title to only such timber as he removes within that time and has no remedy as to timber not removed." *Ream v. Fugate*, 97 S.W.2d 11, 14 (Ky. 1936) (collecting cases).

The parties agree that Kingdom held title to the standing lumber before 2016. [R. 316 at 10; R. 313 at 5; R. 320 at 3.] In 2016, Kingdom executed the first timber contract. [R. 316-2.] Although styled as a "timber sale contract," the agreement merely granted Elk River the right to enter Kingdom's land "for the purposes of cutting and removing timber" for 10 years. *Id.* at 2-3. Thus, the agreement gave Elk River the title to only such timber as it actually removed because the agreement granted it the right to enter land and remove timber. *See Ream*, 97 S.W.2d at 14. Elk River did not exercise this right. [*See, e.g.*, R. 316 at 11.] Consequently, the first timber contract did not pass title of the timber to Elk River and Kingdom retained rights in the timber that it could pass to HBKY through their security agreement. Ky. Rev. Stat. § 355.9-203(2).

Even if the agreement transferred title of the timber to Elk River, Kingdom retained a reversionary interest. When an agreement grants a party the right to cut and remove timber with a time limit, "any timber not cut or removed within that limit reverts to the ownership of the grantor." *Campbell v. Taulbee*, 30 S.W.2d 881, 881 (Ky. 1930); *see also Ream*, 97 S.W.2d at 14 (citing *Bach*, 131 S.W. at 172) ("[S]o much timber as is not removed during that period reverts to the grantor or his assigns."). HBKY argues that Kingdom at least held a reversionary interest that could form the basis for HBKY's security interest. [R. 316 at 11.] Elk River and Mr. Wilson do not contest that Kingdom retained a reversionary interest or that a reversionary

8

interest could be the basis for a security interest. [*See* R. 320 at 3.] Accordingly, HBKY has an enforceable security interest in Kingdom's standing timber.[2]

### C

Does Elk River hold a superior security interest? Elk River alleges that it does. [R. 320 at 2 ("Elk River retains the superior, priority security interest.").] A security interest is an interest in property that secures payment or performance of an obligation. Ky. Rev. Stat. § 355.1-201(ai). For Elk River to have a security interest enforceable against third parties, Kingdom must have authenticated a security agreement for Elk River that describes the timber to be cut and the land concerned. *Id.* § 355.9-203(2)(c).

A security agreement is "an agreement that creates or provides for a security interest." *Id.* § 355.9-102(bv). It becomes "effective according to its terms between the parties, against purchasers of collateral, and against creditors." *Versailles Farm Home & Garden, LLC v. Haynes*, 647 S.W.3d 205, 210 (Ky. 2022) (quoting Ky. Rev. Stat. § 355.9-201(1)). A security agreement need not include magic words to create a valid security interest. *In re Owensboro Canning Co., Inc.*, 82 B.R. 450, 455 (Bankr. W.D. Ky. 1988). Rather, "the instrument's language must simply yield the 'logical conclusion that it was the intention of the parties that a security interest be created.'" *Jones v. Simon*, No. 5:13-CV-00161-TBR, 2014 U.S. Dist. LEXIS 100907, at *7 (W.D. Ky. July 24, 2014) (quoting *id.*); *accord Drown v. Perfect (In re Giaimo)*,

---

[2] In addition, HBKY establishes that it perfected its security interest in the timber. A party perfects a security interest in timber to be cut by filing a financing statement with the office designated for the filing or recording of a record of a mortgage on real property. *Id.* § 355.9-501(1). A financing statement must provide the name of the debtor, the name of the secured party, and indicate the collateral covered. *Id.* § 355.9-502(1). A record of a mortgage acting as a financing statement must also indicate the goods covered, the goods must "become fixtures related to the real property described in the record or the collateral is related to the real property described in the record and is as-extracted collateral or timber to be cut," and the record must be recorded. *Id.* § 355.9-502(3). HBKY shows that the mortgages satisfy these requirements and perfected its security interest. [R. 316 at 15-16.] Elk River and Mr. Wilson do not contest that, if HBKY hold a security interest, HBKY's mortgage perfected it.

440 B.R. 761, 768 (B.A.P. 6th Cir. 2010) ("It is, however, necessary that an intent to grant or to create a security interest be manifested.").

Elk River and Mr. Wilson claim that Elk River retains a security interest because "Elk River entered into its timber contracts with Kingdom." [R. 320 at 2.] They do not specify any portion of the timber contract that indicates an intent to provide Elk River with a security interest. Indeed, Elk River does not dispute that "security interest" or "security agreement" appear nowhere in the timber contract. [*See* R. 316 at 18.] And while the agreement need not include these magic words, Elk River provides no evidence that the parties intended to create an interest in property to secure Kingdom's performance under the contract. *See In re Owensboro Canning Co., Inc.*, 82 B.R. at 455. Simply, a security interest is not the same as a contractual right. Although Elk River entered into a contract with Kingdom, it provides no indication that the agreement intended to create a security interest. Therefore, Elk River does not have a security interest that could be superior to HBKY's interest.

Even if Elk River attained a security interest in the timber, HBKY holds the superior interest. Elk River argues that it holds a superior security interest because it "entered into its timber contracts first in time and prior to Plaintiff's agreements." [R. 320 at 2.] True, Elk River and Kingdom entered into the 2016 timber agreements before Kingdom's mortgage to HBKY. [*See* R. 316-2; R. 316-3; R. 316-4.] However, these agreements were novated by the 2017 timber agreement. [R. 180 at 9.]

A novation "is the entering into a new contract which takes the place of the original." *White/Reach Brannon Rd., LLC v. Rite Aid of Ky., Inc*, 488 S.W.3d 631, 636 (Ky. Ct. App. 2016); *see also Wells Fargo Fin. Ky., Inc. v. Thomer*, 315 S.W.3d 335, 339 (Ky. Ct. App. 2010) ("[A] contract novation relieves parties of the obligations thereunder and results in a new

agreement."). The priority that an interest enjoys is lost when its security agreement is novated. *White/Reach Brannon Rd., LLC*, 488 S.W.3d at 636; *accord Bay Minette Prod. Credit Ass'n v. Citizens' Bank*, 551 So. 2d 1046, 1048 (Ala. 1989) ("[I]t constituted a novation, and, therefore, lost its priority."). Here, even if Elk River received a security interest, the interest was novated in 2017. [R. 180 at 9.] Therefore, the novation subordinated any security interest Elk River had to HBKY's security interest created, attached, and perfected in 2016. [*See* R. 316 at 20.]

### D

Did HBKY agree to let Elk River have a superior interest? Elk River and Mr. Wilson argue that HBKY and Kingdom agreed to impair HBKY's timber security interest in two ways.

First, they argue that HBKY's royalty agreement explicitly subordinated HBKY's security interest to that of Elk River. [R. 320 at 3-4.] In the Royalty Agreement, Kingdom warranted that the "Royalty Interests conveyed hereby to [HBKY] are each free and clear of any and all mortgages," security interests, pledges, conditional sales, or other encumbrances "other than . . . Timber Sale Contract between Grantor and Elk River Export." [R. 50-3 at 2.] Elk River argues that this clause shows that HBKY agreed to subordinate its security interest in favor of Elk River's rights or interests created by the timber contract. [R. 320 at 4.]

Second, they argue that HBKY authorized Kingdom to sell Elk River the timber free of its security interest in the Royalty Agreement. *Id.* at 5-7. A security interest continues in collateral unless the secured party authorized the disposition of the collateral free and clear of the security interest. Ky. Rev. Stat. § 355.9-315(1)(a). Elk River and Mr. Wilson argue that HBKY authorized a sale free of its interest by agreeing that Kingdom "shall have exclusive charge and control of the marketing of all" royalty interest timber "and shall market the [royalty interest

timber] proportionately with and on the same terms as other similar products produced from the [subject timber]." [R. 50-3 at 3.]

Both arguments fail from similar infirmities. Kingdom and HBKY's mortgage agreement granted HBKY "a continuing security interest" in "timber . . . whether now owned or hereafter acquired." [*See, e.g.*, R. 316-7 at 5-6.] Kingdom and HBKY intended the mortgage agreement to allow HBKY to "create a valid, perfected first priority lien" on the timber. *Id.* at 10. The mortgage agreement does not mention any timber sales contract, Elk River, or Mr. Wilson. [*See* R. 316 at 16.] Elk River and Mr. Wilson do not allege that the mortgage agreement contemplates subordinating HBKY's interest to the timber agreement.

In fact, the mortgage agreement acknowledges the existence of the royalty agreement yet unambiguously states that HBKY will hold the first priority lien on the timber. Specifically, Kingdom agreed that HBKY's lien "shall be absolute and unconditional and shall not in any manner be affected or impaired" by an act of any obligation holder. [R. 316-7 at 26.] Moreover, HBKY's lien "shall not in any manner be impaired or affected by any release, . . . sale, . . . modification or disposition" of any obligation or collateral, "including, without limitation, the Other Security Documents." *Id.*

In addition, the royalty agreement did not affect interests in underlying collateral. The mortgage agreement granted a security interest in the "properties, rights, interests, and privileges" of Kingdom's timber. [R. 316 at 5-6.] In contrast, the royalty agreement did not affect interest in the underlying timber. The royalty agreement merely assigns royalty interests produced from the timber. [R. 50-3 at 1.] The royalty agreement defines timber royalty interests as interests "derived from activities conducted on or associated with" the timber, including timber revenues. *Id.* at 3. In fact, the royalty agreement explicitly excludes the underlying

12

timber, providing that "[n]o royalty interest includes any right, title, or interest in" the timber. *Id.*

Elk River and Mr. Wilson cite contract provisions concerning only these royalty interests. For example, they base their first argument on a provision warranting that the "*Royalty* Interests" are "each free and clear of any and all mortgages." *Id.* at 1-2 (emphasis added). Elk River and Mr. Wilson's second argument hinges on a provision stating that Kingdom shall have control over the marketing of all *royalty interest* timber and shall market the *royalty interest* products on the same terms as other products. *Id.* at 3 (emphasis added). Because royalty interests do not include interests in the underlying timber, the royalty contract did not impair any of HBKY's interests in the underlying timber.

Therefore, the agreements collectively show that Kingdom intended to grant HBKY a first priority lien in the timber, not subject to any right or interest held by Elk River. And even if the royalty agreement demonstrated an intent to subordinate HBKY's interest, the royalty agreement affected only that—the royalties—and not any underlying timber interests.

### E

Did Elk River otherwise buy the timber free and clear of HBKY's security interest? Elk River and Mr. Wilson argue that Elk River bought the timber free of HBKY's security interest by purchasing the timber in the ordinary course of business. [R. 320 at 7-8.] However, they fail to show that Elk River was a buyer in the ordinary course of business.

A buyer in the ordinary course of business takes goods free of a security interest created by the seller even if the security interest is perfected and the buyer knows of the security interest. Ky. Rev. Stat. § 355.9-320(1). A buyer in the ordinary course of business is a person that "buys goods in good faith, without knowledge that the sale violates the rights of another person in the

goods, and in the ordinary course from a person . . . in the business of selling goods of that kind." Ky. Rev. Stat. § 355.1-201(i). The sale must "comport[] with the usual or customary practices in the kind of business in which the seller is engaged or with the seller's own usual or customary practices." *Id.* The party asserting that it is a buyer in the ordinary course has the burden of proving this status. *See, e.g.*, *In re Certain Pharm. & Proceedings of Northland Providers, Inc.*, 78 F. Supp. 2d 954, 963 (D. Minn. 1999); *In the Matter of Gary Aircraft Corp.*, 681 F.2d 365, 373 (5th Cir. 1982), *cert. denied*, 462 U.S. 1131; *United States v. Cont'l Ill. Nat'l Bank and Tr. Co. of Chi.*, 889 F.2d 1248 (2nd Cir. 1989).

      Elk River and Mr. Wilson fail to meet their burden. They allege only that Elk River "purchased [the timber] in the 'ordinary course of business'" because the "Royalty Collateral Agreements explicitly authorize Kingdom to market and sell the timber, and these agreements also specifically identify prospective timber contracts." [R. 320 at 8.] Elk River and Mr. Wilson do not allege that Kingdom was in the business of selling timber. *See* Ky. Rev. Stat. § 355.1-201(i). They do not allege that Elk River bought the timber in good faith. *See id.* § 355.1-201(t) (defining good faith as "honesty in fact and the observance of reasonable commercial standards"). And they do not show that Elk River purchased the timber because Elk River neither received title for the timber nor identified the timber it intended to harvest. *See CIT Grp./Com. Servs., Inc. v. Constellation Energy Commodities Grp.*, No. 12-16-ART, 2012 U.S. Dist. LEXIS 146673, at *33 (E.D. Ky. Sep. 30, 2012) (finding that a buyer acquires goods either when the goods are identified or when title is transferred to the buyer); [R. 323 at 10-11 (alleging that no timber "has ever been designated by Elk River" as timber to be harvested).] Therefore, Elk River has not shown that it purchased the timber free of HBKY's security interest.

**III**

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Elk River Exports and Robin T. Wilson's Motion for Summary Judgment [**R. 313**] is **DENIED** and

2. HBKY's Motion for Summary Judgment as to Count One against Elk River Exports and Robin T. Wilson [**R. 316; R. 317**] is **GRANTED**.

This the 26th day of July, 2023.

Gregory F. Van Tatenhove
United States District Judge