UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| HBKY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civ. No. 6:21-cv-00101-GFVT-HAI |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| KINGDOM ENERGY RESOURCES, LLC, | ) | **&** |
| *et al.*, | ) | **ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Plaintiff HBKY, LLC's Motion for Partial Summary Judgment. [R. 363.] HBKY moves for partial summary judgment against Defendants JRL Coal, Inc., Cuz Coal Company, LLC, and Moe Coal Company, LLC on the issue of who holds a senior interest on a piece of encumbered property known as "the Brookside property." HBKY argues that the security interest it obtained in 2016 has priority over any interest of the Defendants. For the reasons that follow, HBKY's motion will be **GRANTED**.

I

In 2012, Defendants Cuz Coal and Moe Coal executed separate lease agreements with Manalapan Land Company, which owned the Brookside property located in Eastern Kentucky. [R. 363 at 6-7.] In its lease agreement, Cuz Coal agreed to mine coal on the surface of the Brookside property and to pay certain royalties to Manalapan. *Id*. at 6. Similarly, in its lease agreement Moe Cole agreed to mine coal underground at the Brookside property and to pay certain royalties to Manalapan. *Id*. at 6-7.

In 2016, Manalapan went bankrupt and sold Brookside to Kingdom Energy. *Id*. at 7. In

order to pay for the property, Kingdom Energy and other borrowers executed a note purchase agreement with three lenders, including the Senior Health Insurance Company of Pennsylvania ("SHIP"), a predecessor company in interest to Plaintiff HBKY, LLC. [R. 1 at ¶ 36.] To collateralize the roughly $22,000,000 dollars borrowed, the borrowers encumbered certain real property, personal property, and interests in land with mortgages. *Id*. at ¶ 38. Brookside was encumbered under the "Harlan Mortgage." [R. 363 at 7.] SHIP subsequently perfected the Harlan Mortgage by recording it in the real property records for Harlan County. *Id*.

In 2017, Kingdom Energy failed to make payments on its Note, and HBKY's predecessors in interest sued in federal court in New York. [R. 1 at ¶¶ 51-52.] In 2018, the New York court entered a Consent Judgment resolving the matter, in which Kingdom was found to be in default on its loan, was determined to have no defense to the enforceability of the loan documents and was adjudged to owe the remainder of its debt. [*See* R. 1-9.] During the midst of the New York litigation, Kingdom Energy sought to terminate its 2012 coal leases with Moe Coal and Cuz Coal. [R. 363 at 8.] Extensive litigation then ensued in Kentucky and Georgia between Kingdom Energy and its lessees. *Id*. That litigation ultimately resulted in JRL, Moe Coal's and Cuz Coal's contract miner, being permitted to mine on the land and Moe and Cuz left on the leases in name only. [*See* R. 102; R. 102-1.] This new status quo was memorialized by way of a Settlement Agreement and Amended Lease in June 2018. [*See* R. 102; R. 102-1.] As part of the settlement, JRL agreed to certain royalty conditions and to pay $100,000 per month to Kingdom Energy as an Advanced Monthly Minimum for six months, to begin in June 2018. [R. 102 at 2.] But a little over a month later, Kingdom and JRL executed a Master Amendment Agreement to the Amended Lease. [R. 100-8.] Under the Master Agreement, JRL paid Kingdom a lump sum of $350,000 and permitted Kingdom to keep $100,000 it had already paid

2

under the Amended Lease.  *Id*. at 2.  And in exchange for this payment, Kingdom Energy agreed to release JRL's royalty payment obligation, "regardless of the quantity of Leased Coal removed or to be removed" from Brookside.  *Id*. at 3.

Soon after, Kingdom Energy's original lenders consolidated and assigned all of the Notes to SHIP.  [*See* R. 1 at 14-16.]  Once SHIP gained control of the Notes, it established HBKY as a successor collateral agent who "succeeded [all of its] interests, rights, title, and obligation as collateral agent."  [R. 1 at 16.]  In other words, HBKY was created by SHIP to litigate this action and collect the debt that SHIP is owed.  *See id*.

Now, HBKY asks the Court to settle any discrepancy over competing claims of interest to the Brookside property and to find that HBKY's interest under the Harlan Mortgage is superior to JRL's interest under the 2018 Master Agreement.  [R. 363 at 16.]  Essentially, in order to recoup its capital, HBKY ultimately wants to be able to sell the Brookside property without the encumbrance of JRL's coal lease.  In support of its request, HBKY argues that the 2018 Master Agreement between Kingdom Energy and JRL so drastically changed the legal relationship between those parties that the Master Agreement effectively constitutes a novation.  Because that novation came after HBKY recorded the Harlan Mortgage in 2016, HBKY's mortgage would take priority over JRL's lease interest—which means that JRL's lease would terminate upon foreclosure sale.  In response, JRL raises a litany of arguments that essentially rebuke HBKY's allegation that the 2018 Master Agreement was a novation.  Rather, argues JRL, the Master Agreement constitutes an Amendment to the Amended and Restated Lease, which amended the 2012 Leases.  Accordingly, JRL's lease rights pre-date HBKY's mortgage.  Now that the matter is ripe for review, the Court turns to HBKY's pending motion.

3

**II**

Summary judgment is appropriate when the pleadings, discovery materials, and other documents in the record show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). A genuine dispute exists "if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corp. of the Pres. of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The moving party has the initial burden of demonstrating the basis for their motion and identifying the parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy their burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. Once the movant satisfies this burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating there is a genuine issue in dispute. *Hall Holding*, 285 F.3d at 424 (citing *Celotex Corp.*, 477 U.S. at 324).

The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). In doing so, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

**A**

HBKY asserts that it has a superior interest in the Brookside property because HBKY has an enforceable security interest in the land, including all of its coal interests. [R. 398 at 4.] JRL does not contest that HBKY has a valid security interest in Brookside. Rather, JRL argues, among a plethora of other things, that HBKY's security interest cannot have priority over JRL's because the 2012 Lease Agreements constituted a conveyance of title to the coal underneath Brookside. [R. 368 at 10-14 (citing *Johnson v. Coleman*, 288 S.W.2d 348, 349 (Ky. 1956) (explaining that "what is commonly termed a coal mining lease is regarded as the conveyance of an estate or interest in the minerals as land . . . ."))]. Because HBKY's predecessors took the Harlan Mortgage "after and subject to the prior conveyance to Moe Coal and Cuz Coal", HBKY's interest cannot take priority over JRL's property interest in the coal. *Id*. at 14. In layman's terms, the 2012 leases effectively sold the coal four years prior to HBKY's 2016 mortgage.

In reply, HBKY makes several concessionary assumptions. For the purposes of this particular matter, HBKY assumes that the 2012 Leases were conveyances of the Brookside property and that the 2012 Leases would have priority over the 2016 Harlan Mortgage. [R. 398 at 2-3.] Thus, there is no disagreement on JRL's point described above. HBKY's argument, however, is that the 2018 Amended and Restated Lease and the 2018 Master Agreement alter the 2012 Leases' terms so materially that the 2018 agreements constitute a novation. Thus, because a novation results in a new agreement, JRL's priority interest from the 2012 Leases was lost. And because HBKY had filed the Harlan Mortgage prior to the 2018 novation, HBKY's interest now takes priority.

As a preliminary matter the Court will summarily address some of JRL's scattershot arguments, which include assertions that HBKY's motion is incomplete and premature, that it fails to establish that no genuine issue of fact exists, and that HBKY has not plead novation. The Court is unconvinced that HBKY's motion is incomplete and premature. "[A] novation is the entering into a new contract which takes the place of the original one and in which it is merged and extinguished." *White/Reach Brannon Rd., LLC v. Rite Aid of Ky., Inc*, 488 S.W.3d 631, 636 (Ky. Ct. App. 2016). Whether the parties novated a prior contract is a question of law. *Id*. at 638. HBKY has presented a narrow issue for consideration, which simply requires the comparison of the 2012 Leases with the 2018 agreements. Upon review of the record, the Court finds that determining whether a novation exists is appropriate at this juncture. No additional fact discovery is needed to perform a side-by-side comparison of the documents and to decide whether a new contract exists or not. Indeed, as HBKY points out, that is precisely what this Court did previously in a separate determination of HBKY's priority interests. [*See* R. 353.] Accordingly, the Court will proceed to determine whether the 2012 Lease Agreements were novated by the 2018 Agreements.

> Under Kentucky law:
>
> A novation is the substitution of a new obligation for an old one, with intent to extinguish the old one, or the substitution of a new debtor for an old one, with the intent to release the latter, or the substitution of a new creditor, with the intent to transfer the rights of the old one to him.

*M.A. Walker Co. v. PBK Bank*, 95 S.W.3d 70, 76 (Ky. Ct. App. 2002) (quoting *Truscon Steel Co. v. Thirlwell Elec. Co.*, 265 Ky. 414, 96 S.W.2d 1023, 1025 (Ky. 1936)). "[I]ntent is the controlling element…[;] unless the transaction was intended to extinguish the old obligation by substituting the new one therefor, a novation is not effected." *Clark v. Thompson*, 219 S.W.2d


22, 28 (Ky. 1948) (quotation omitted).  The burden of proving novation is on the party asserting it.  *Kirby v. Scroggins*, 246 S.W.2d 453, 455 (Ky. 1952).

HBKY argues that both the 2018 Amended and Restated Lease and the 2018 Master Amendment Agreement novate the 2012 Lease Agreements executed between Manalapan and Moe Coal and Cuz Coal.  First, argues HBKY, the 2018 documents must constitute a new contract because JRL was not even a party to the 2012 agreements.  HBKY focuses the Court's attention on the 2018 Master Agreement, contending that the Agreement, "is an entirely new agreement with (a) new terms, (b) a new party, (c) a new form of payment, (d) the abandonment of existing claims, and (e) new consideration meant to replace the 2012 Original Filing."  [R. 363 at 15.]  In essence, HBKY argues that the 2018 Agreements, especially after execution of the Master Agreement, are so materially different from the 2012 Lease Agreements that the 2018 Agreements are not just "amendments"—rather, they must constitute new contractual agreements altogether.

JRL's substantive rebuttals argue a number of points as to why the 2018 Agreements do not novate the 2012 Leases.  First, there is no substitution of a new obligation for an old obligation.  [R. 368 at 6.]  Second, the terms of the 2018 Agreements are not inconsistent with the 2012 Leases in such a manner as to qualify as a novation.  *Id*. at 6-10.  Moreover, in the Amended Lease, the parties Kingdom Energy, Moe Coal, Cuz Coal, and JRL expressly stated their intention "to amend and restate the Original Underground lease in its entirety" which indicates an express intention to amend.  *Id.* at 6.  This express intention to amend is further reinforced by Article 4.01 of the Master Agreement, which "evidences a clear intention to amend the Amended Lease, and to leave all the unaffected sections of the Amended Lease in effect."  *Id*. at 7.  According to JRL, this "amendment expressly referring to prior obligations and

reiterating them is the antithesis of a novation." *Id.* Third, HBKY's mortgage permits modification of the 2012 Lease and does not give HBKY the right to void modifications. *Id.* at 19-20. And fourth, HBKY previously accepted the validity of the Amended and Restated Lease. *Id*. at 21. In reply, HBKY does not dispute that its 2016 Mortgage does not prohibit amendments to the 2012 leases and agrees that the 2018 Agreements became effective and encumbered the Brookside property (subject to HBKY's 2016 Mortgage). [R. 398 at 2-3.]

Upon review, the Court finds that Manalapan Land Company's original lease agreements with Moe Coal and Cuz Coal to have been impliedly novated by the 2018 Master Agreement. "If the new contract in express terms rescinds the old one, no question can be asked [of intent to novate]; yet the same result follows, as a necessary implication, and takes place by operation of law, without any express agreement to that effect whenever the new contract is manifestly in place of or inconsistent with a former one, or which renders a former contract impossible of performance." *White/Reach Brannon Rd., LLC v. Rite Aid of Ky., Inc.*, 488 S.W.3d 631, 636-37 (Ky. Ct. App. 2016). JRL contends that there is no implied novation because the parties expressly stated their intention to amend the 2012 Leases, and because the 2018 documents specifically refer to the original 2012 Leases. [R. 368 at 6-7.] According to JRL, the prior obligations of Moe Coal and Cuz Coal were not substituted for new obligations. Further, JRL was merely added as a party, not substituted. *Id*. at 7. And the 2018 Agreements are not inconsistent with the 2012 Leases because they do not make the 2012 Leases impossible to perform—rather, the Amended and Restated Lease "expressly details how those obligations [under the 2012 Leases] will be performed going forward under the amendments described therein." *Id*. at 8. Practically speaking, neither the Amended and Restated Lease nor the Master

8

Agreement provide a substitution of obligations that are so manifestly inconsistent with the 2012 Leases that a new contract was created.

The Court disagrees with JRL's contention that JRL's 2018 Agreements merely "amended" the 2012 Leases. "An amendment is that which alters by modification, deletion, or addition." *J.C.B. Sales Ltd. v. Wallenius Lines*, 124 F.3d 132, 136 (2d. Cir. 1997) (internal citations omitted). "But a novation occurs, conversely, when the terms of a contract are modified with the intent to replace the original contract." *HBKY, LLC v. Kingdom Energy Res., LLC*, Civ. No. 6:21-cv-00101-GFVT, 2022 U.S. Dist. LEXIS 113904 at *18 (E.D. Ky. June 27, 2022). In this matter, the changes made to the 2012 Lease agreements were so substantive that the obligations of the parties have been drastically altered.

First, the Master Agreement, via the Amended and Restated Lease, applies only to underground mining in the Darby coal seam [*see* R. 102; R. 100-8]; whereas the 2012 Original Leases encompassed surface mining and underground mining in the Kellioka, Harlan, Creech, and Darby seams. [*See* R. 100-4.] In other words, it appears that only the Darby seam is subject to any mining by the lessees. Second, JRL's role as described by the Master Agreement appears to have usurped that of Moe Coal's and Cuz Coal's in the 2012 Leases. The Amended and Restated Lease originally added JRL as a party to the transaction, specifically as an approved contract miner for Moe Coal and Cuz Coal. Pursuant to the Amended and Restated Lease, neither Moe Coal nor Cuz Coal was released from their duties and obligations under their 2012 Original Leases. But the Master Agreement pertains only to JRL. Indeed, the Master Agreement describes, among other things, the following: (1) JRL's right to purchase the Darby coal seam; (2) JRL's royalty advanced royalty payments, which fully replaces Moe Coal's and Cuz Coal's previous compensatory obligations; and (3) Kingdom's promise not to give consent to Moe Coal

or Cuz Coal to employ any other contract miner or assign their rights to anyone but JRL. Thus, contrary to JRL's argument that it was merely "added" as a party to the transaction, it appears by all practicality that JRL was effectively substituted as the party with whom Kingdom Energy is doing business.

Third, focusing on JRL's advanced royalty payments mentioned above, the Master Amendment Agreement completely changes the compensation structure of the 2012 Leases. Under the previous agreements, Moe Coal and Cuz Coal promised Manalapan running compensation in the form of the following: (1) a Production or "Tonnage" Royalty based on the sale of mined coal; (2) a Wheelage Royalty in the amount of $0.20 per ton of coal mined on third-party tracts transported across the property; and (3) a Minimum Annual Royalty. These running compensation payments were slightly changed in the Amended and Restated Lease, replacing the Minimum Annual Royalty with an Advanced Monthly Minimum to be owed by JRL. The Master Agreement explicitly replaces all of those running compensation payments—in exchange for an Advanced Royalty of $350,000, all of the running compensation payments due to Kingdom Energy were deemed satisfied in full. Moreover, under the Master Agreement, there would no longer be any obligation by Moe Coal or Cuz Coal to comply with minimum performance obligations and standards. Altogether, Kingdom Energy's form of compensation was not just amended—it was completely altered.

There are other alterations to the 2012 Original Leases—shortened duration terms, reassignment of tax burdens, rights to purchase—that HBKY points out, all of which further tend to indicate that the 2012 Original Leases were more than just amended. [*See* R. 363-2.] The Court understands JRL's perspective, which is that the 2018 Agreements merely modified the terms of the 2012 Leases. But was the 2018 Kentucky Men's Basketball team the same "team"

10

as the 2012 team? Sure, they wore Blue and White uniforms with "Kentucky" across their chest and played their home games at Rupp Arena. No one, though, would consider the 2018 Cats and the 2012 Cats the same "team." Why? Because the essential parts—the players—were different. The same is true with the contracts at issue in the present case. Because the essential parts of the 2018 Amended and Restated Lease and the Master Amendment Agreement are so different from those of the 2012 Original Leases, a new contract was formed.

B

Having determined that the 2012 Lease Agreements were novated, the Court turns to the issue of priority. JRL argues that HBKY's security interest cannot have priority over JRL's because the 2012 Lease Agreements constituted a conveyance of title to the coal underneath Brookside. [R. 368 at 10-14.] Even if that was the case, the 2012 Leases were novated by the 2018 Master Amendment Agreement. "The priority that an interest enjoys is lost when its security agreement is novated." *HBKY, LLC v. Kingdom Energy Res., LLC*, 2022 U.S. Dist. LEXIS 113904 at *11 (citing *White/Reach Brannon Rd., LLC*, 488 S.W.3d at 636). Here, JRL's interest in Brookside derives from the 2018 Master Amendment Agreement. Thus, the novation subordinated any interest that JRL had to HBKY's security interest, which was created, attached, and perfected in 2016.

C

As a housekeeping matter, the Court will briefly turn to the issue of reclamation liability, which JRL brought up in its response to HBKY's motion. The Court finds it inappropriate to determine the issue of reclamation liability at this juncture. That issue would be better considered in isolation. The Court will, therefore, emphasize that today's ruling is narrowly confined to the issues of novation and priority. Should the parties determine that adjudication of

reclamation liability is necessary, they may bring it to the Court's attention through future briefing.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Plaintiff HBKY, LLC's Motion for Partial Summary Judgment [**R. 363**] is **GRANTED**.

This the 28th day of March 2024.

Gregory F. Van Tatenhove
United States District Judge