UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| HBKY, LLC, ) | |
|     Plaintiff, ) | |
| ) | Civil No. 6:21-cv-00101-GFVT-HAI |
| v. ) | |
| ) | |
| ELK RIVER EXPORT, LLC, *et al.*, ) | **MEMORANDUM OPINION** |
| ) | **&** |
|     Defendants. ) | **ORDER** |
| ) | |
| ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on the Hensley Heirs' objections to an Order entered by Magistrate Judge Hanly Ingram. [R. 949; R. 950; R. 951.] The Heirs appear to primarily object to Judge Ingram's determination that the opinions of the Hensley Heirs on technical matters, such as old legal documents and boundary placement surveys, are not admissible. Because Judge Ingram's Order is not clearly erroneous or contrary to law, the objections **[R. 949; R. 950; R. 951]** are **OVERRULED**.

**I**

Magistrate Judge Ingram issued his Order as part of an ongoing property boundary dispute and quiet title action involving HBKY, the JRL Defendants, and the Hensley Heirs. The Heirs have been winnowed down to just four active *pro se* litigants remaining – Nawanna Privett, Jennifer Griffith, Stephanie Fairchild Fister, and William Desha Fister III. [R. 891.] Only the first three originated any motions addressed in Judge Ingram's Order and only those three filed any objections.

In his Order, Judge Ingram first walked through the background of the case and the boundary dispute at issue. [R. 942 at 1-5.] Judge Ingram then turned to a number of outstanding motions. First, Judge Ingram addressed the "First Turner Patent Motion" and construed it as "a motion to exclude or strike the Turner Patent as invalid or in need of correction." *Id*. at 6. Judge Ingram denied the motion, finding the "James Turner 1800 Acre Patent" of July 6, 1846, to be a relevant and admissible piece of evidence that the court would consider "when the time comes to make a ruling on the merits." *Id*. at 7. Next, Judge Ingram turned to the "Second Turner Patent Motion," which appeared to be a motion for partial summary judgment. *Id*. at 7. As many expert reports remained outstanding, Judge Ingram denied that motion, without prejudice, as premature. *Id*. at 7, 12. Then, Judge Ingram pivoted to the "Surveyor Ryan Johnson Motion," which Judge Ingram again determined to be premature. *Id*. at 8.

Finally, Judge Ingram addressed a motion *in limine* from HBKY to exclude the opinions of the Hensley Heirs on technical matters. *Id*. at 8-12. Judge Ingram explained the distinctions between lay testimony and expert testimony, carefully considered the court's role as a "gatekeeper" of expert qualifications, and evaluated Kentucky law on the role of expert testimony in cases such as this. *Id*. This assessment, alongside a familiarity with the disputed facts at issue in this case, led to Judge Ingram's conclusion that "[t]his is a case that cries out for expert testimony" and that "the Heirs participating in this case have not met their burden of showing they qualify as experts." *Id*. at 11.

The remaining Hensley Heirs objected to Judge Ingram's order. [R. 949; R. 950; R. 951.] The Heirs' objections are all almost identical and were all filed slightly late. By way of explanation, and apology, Hensley Heir Jennifer Griffith explains that the Heirs were unaware that the filings must arrive and be filed by the proper date, not simply postmarked by that date.

2

[R. 992 at 1.]  Importantly, Griffith explains that the Heirs' responses to Judge Ingram's order were "not intended as an objection but rather as a clarification of several items addressed in the order" and they do not object "to the court's requirement of expert testimony." *Id*. at 7-8. Despite the lateness of their filings, in the interest of thoroughness the Court will address the heart of the Hensley Heirs' not-objections.

II

A

28 U.S.C. § 636(b) governs referral of dispositive and non-dispositive matters, which are subject to different standards of review.  Judge Ingram's Order here is a non-dispositive matter subject to clear error review.  "When a magistrate judge determines a non-excepted, pending pretrial matter, the district court has the authority to 'reconsider' the determination, but under a limited standard of review." *Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993) (citing 28 U.S.C. § 636(b)(1)(A)).  Pursuant to Federal Rule of Civil Procedure 72(a), the Court will set aside or modify a magistrate judge's non-dispositive order only if the Court finds that at least a portion of the order is "clearly erroneous or contrary to law."  An order is contrary to law if it "'fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (quoting *United States v. Winsper*, 2013 WL 5673617 at *1 (W.D. Ky. Oct. 17, 2013)).  "A [factual] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *see also Bisig*, 940 F.3d at 219.

**B**

Turning to the objections themselves, it is not especially clear what the Hensley Heirs object to about Judge Ingram's Order. At its core Judge Ingram's Order did two things: it cleaned up the docket by determining that many of the Hensley Heirs' filings were premature and denying them without prejudice and it granted in part HBKY's motion *in limine* to exclude the opinions of the Hensley Heirs on technical matters. The Heirs' objections cannot overcome their high burden to overturn Judge Ingram's Order. For much of their objections, the Hensley Heirs attempt to continue litigating the very arguments Judge Ingram determined to be premature. The Court is sympathetic to the desire to race to the merits of a decision, but the Hensley Heirs offer no authority to suggest that Judge Ingram's approach to docket management, which does not prejudice the Heirs, is clearly erroneous. Instead, the order merely ensures that this matter does proceed to the merits and that relevant information will be considered in the proper course.

Beyond mere housekeeping, Judge Ingram's order also granted in part HBKY's motion *in limine* to exclude the opinions of the Hensley Heirs on technical matters. This determination appears to be, despite Griffith's later representation, what the Heirs' substantive objections are directed toward. They explain that "this is not a complicated matter" and that "[i]ncorporating rules, such as the need for experts, in surveying and heirship are an unnecessary costly and time consuming." [R. 949 at 18.] In support they cite generally to *Daubert* and the Federal Rules of Evidence.

In assessing HBKY's motion, Judge Ingram looked to the Federal Rules of Evidence (specifically Rules 701 and 702) and the principles laid out in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-94 (1993), to determine that while "non-experts could

certainly testify in this case to non-technical facts, the Court, on account of its gatekeeping responsibility, cannot permit lay witnesses to testify to technical facts, such as the interpretation of deeds and surveys." [R. 942 at 11.] Judge Ingram explained that the issue at hand is a property boundary dispute, which typically involves "technical and specialized matters that require expert testimony" "such as researching titles and deeds and conducting surveys." *Id*. at 10.  However, Judge Ingram noted that "lay witnesses can testify to nonspecialized facts, such as the location of a boundary monument or past usage of the land." *Id*.  Judge Ingram reached this conclusion and drew this distinction after carefully assessing a number of Kentucky cases involving expert and lay testimony in quiet title actions. *Id*. at 10-11.

The Heirs do not present a sufficient response to convince the Court that Judge Ingram's order restricting the admissibility of certain evidence was "clearly erroneous or contrary to law." At their most direct they assert that "the dispute is more of a logic riddle concerning patent law rules than it is a placement of survey lines." [R. 949 at 11.]  However, they also appear to acknowledge that they themselves are "not allowed to present survey expertise about the boundary." *Id*. at 10-11.  They then provide a demonstrative aid attempting to explain the circumstances of *Pennington v. Cumberland Valley Land Co.*, 150 Ky. 576, 150 S.W. 655 (1912), and analogizing it to the case at hand.

As Judge Ingram concisely summarized, "[t]his is a case that cries out for expert testimony." [R. 942 at 11.]  It involves a number of old legal documents – cases, deeds, land patents, and the like – as well as on the ground survey data.  It is not controversial to suggest that lay witnesses cannot opine on such technical and particularized areas of expertise.  And, as Judge Ingram found, the employment of experts for such purposes in determining Kentucky quiet title actions is well established. *See Armstrong Coal Co. Inc. v. Blackburn,* 2014 WL 4364625 (W.D.

5

Ky. Sept. 3, 2014) (expert testimony utilized in a quiet-title claim to support chains of title and placement of boundary lines); *Hamilton v. P.B. Stratton Fam. P'ship, LLC*, 2024 WL 3997119, at *8 (Ky. Ct. App. Aug. 30, 2024) (multiple experts utilized to interpret evidence on where various boundaries lay); *Estep v. Reinking*, 2019 WL 5855981, at *2 (Ky. Ct. App. Nov. 8, 2019) (expert surveyor testimony used to trace property though deeds and establish boundary); *Elsea v. Day*, 448 S.W.3d 259, 265-66 (Ky. Ct. App. 2014) (collecting cases concerning the necessary qualifications for an expert surveyor). Nor is there any question, as the Heirs themselves appear to admit, that they are not such experts. Judge Ingram therefore does not "fail[] to apply or misapply[y] relevant…case law" such that his determination is clearly erroneous. *Bisig*, 940 F.3d at 219.

### III

Much of Judge Ingram's Order was mere housekeeping designed to "focus the parties' energies toward a procedurally appropriate resolution." [R. 942 at 11.] To the extent that it made a substantive ruling, the order excludes evidence from lay witnesses (primarily the Hensley Heirs) on matters which require technical expertise and expert testimony – namely "the interpretation of old legal documents, considered together with on-the-ground survey data" – and found that "the Heirs participating in this case have not met their burden of showing they qualify as experts." *Id*. Despite their objections, the Hensley Heirs do not show that Judge Ingram's Order is clearly erroneous or contrary to law. Accordingly, their objections **[R. 949; R. 950; R. 951]** are hereby **OVERRULED**.

This the 9th day of May, 2025.

Gregory F. Van Tatenhove
United States District Judge

6