UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| HBKY, LLC, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) Civil No. 6:21-cv-00101-GFVT-HAI |
|  | ) |
| ELK RIVER EXPORT, LLC, *et al.*, | ) |
|  | ) **ORDER** |
| Defendants. | ) |
|  | ) |
|  | ) |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is before the Court on a series of Objections raised by the Hensley Heirs to a Report and Recommendation prepared by United States Magistrate Judge Hanly A. Ingram. [R. 1075.] Judge Ingram recommends that this Court grant HBKY's motion for summary judgement. The Hensley Heirs object, each on the same basis through individually filed, identical objections. For the reasons that follow, the objections of the Hensley Heirs are **OVERRULED**, Judge Ingram's Report and Recommendation [R. 1075] is **ADOPTED** as and for the opinion of the Court, and HBKY's Motion for Summary Judgment [R. 969] is **GRANTED**. Additionally, the Cross-Motions for Summary Judgement filed by Defendants Nawanna Privett [R. 1041] and Stephanie Fairchild Fister [R. 1042] are **DENIED**.

I

The Hensley Heirs were brought into this lawsuit through Plaintiff HBKY's January 2022 Amended Complaint.[1] [R. 122.] Count Seven of the Amended Complaint seeks declaratory judgment and quiet title with respect to the Hensley Heirs. *Id*. at 5-8. At the core of the dispute

---

[1] Although there are several dozen Hensley Heirs that are named parties in this case, currently four are active in the litigation: Nawanna Privett, Jennifer Griffith, Stephanie Fairchild Fister, and William Desha Fister III.

between HBKY and the Hensley Heirs is a boundary dispute between the so-called "Brookside" property, and adjoining land owned by the Hensley Heirs. The Heirs presently have a coal lease with Defendant JRL Coal, and a resolution of the boundary dispute is necessary to determine "the calculation of damages and/or royalties that JRL Coal would owe to the Plaintiff pursuant to Count Four of the Complaint. JRL Coal and the JRL Defendants are currently in bankruptcy, but the bankruptcy court has granted an exception to the automatic bankruptcy stay permitting this Court to address the property boundary dispute. [R. 1005.]

HBKY moved for summary judgment on December 9, 2024. [R. 969.] Alongside their Motion, HBKY included supporting affidavits by title attorney Daniel L. Farmer and licensed surveyor Nathan Ryan Johnson. *Id*. In response, the Hensley Heirs submitted an affidavit from surveyor Gary Ousley. [R. 980-985.] The content of these affidavits were exhaustively analyzed by Judge Ingram and are not the subject of the Heirs' objection. On June 20, 2025, the Heirs filed cross-motions for summary judgment and requested a hearing. [R. 1041; R. 1042.] Judge Hanly Ingram addressed these motions for summary judgment in a Report and Recommendation filed in the record on September 3, 2025. [R. 1075.] Three of the Hensley Heirs filed identical objections on September 16, 2025 [R. 1082], September 17, 2025 [R. 1084], and September 23, 2025 [R. 1087]. HBKY responded to the Objections on September 26, 2025. [R. 1088.]

II

To receive review of a magistrate judge's decision, a party must submit particularized objections to a report and recommendation within fourteen days of the date of service thereof. *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Thomas v. Arn*, 728 F.2d 813, 815 (6th Cir. 1984). General objections that require a judge's interpretation are insufficient to preserve issues. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d

2

373, 380 (6th Cir. 1995). An objecting party must provide sufficient specificity "to enable the district court to discern those issues that are dispositive and contentious." *Miller*, 50 F.3d at 380. An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply restates arguments already presented, is not an 'objection' as that term is used in this context. *United States v. Vanover*, 2017 WL 1356328 (E.D. Ky. Apr. 11, 2017). In contrast, a specific objection must "explain and cite specific portions of the report which [the defendants] deem problematic." *Litteral v. Caraway*, 2019 WL 3006547, at *1 (E.D. Ky. 2019, July 10, 2019) (citing *Robert v. Tesson*, 507 F.3d 981, 994) (6th Cir. 2007)).

The Hensley Heirs' disagreement with Judge Ingram's report and recommendation amounts to a single objection.[2] In the Heirs' view, Judge Ingram's analysis overlooks the intent of grantor William B. Kelly as to the boundaries of the property conveyed to Loyd Hensley in 1907. Specifically, in their view, "the land described in the 1907 deed must be interpreted using the boundary placement in Kelly's mind and thus his intent at the time." [R. 1082 at 12.] Thus, the Heirs urge this Court to view the boundaries of his 1907 conveyance through "his correction deed, not by a later legal ruling." *Id*. Under the Heirs' interpretation of the law, intent of the parties, as opposed to the language of the deed, should dictate this Court's analysis.

Judge Ingram's analysis does not ignore the fact that Mr. Kelly and Mr. Hensley thought the property boundary was in a different location at the time of the 1907 conveyance. As Judge Ingram explicitly acknowledged, it is possible that the men "did not realize the extent of the 1800-acre patent," or "[t]hey may have incorrectly thought that the ridge itself was the

---

[2] This objection at first blush appears to be a general objection, and thus not adequately preserved. For the most part, the Heirs objection merely restates the arguments raised in their Motion for Summary Judgment. See [R. 1041; R. 1042.] However, in view of our need to give deference to *pro se* litigants, we will proceed to the merits of the Heirs' objection, construing it as an objection to Sections V.B.1-3 of the Recommended Disposition. See *Pilgram v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (acknowledging a "more 'liberal' pleading standard applicable to *pro se* litigants").

3

northernmost boundary of the 1800-acre patent." Judge Ingram correctly concludes, however, "their intentions and mistaken beliefs are not controlling."

As Judge Ingram correctly points out, the Heirs' arguments regarding the legal significance of the parties' intent are misplaced. The interpretation of deeds is a question of law, not a question of fact. *Florman v. MEBCO Ltd. P'ship*, 207 S.W.3d 593, 600 (Ky. App. 2006). Although the intent of the parties is important to the analysis, the understanding of this intent must be "gathered from the four corners of the instrument." *Smith v. Vest*, 265 S.W.3d 246, 249 (Ky. App. 2007) (citing *Phelps v. Sledd*, 479 S.W.2d 894, 896 (Ky. 1972)). The Court must not "substitute what [the] grantor may have intended to say for what was said" when examining the deed. *Phelps*, 479 S.W.2d at 896. Furthermore, "common meaning and understanding" must be ascribed to the words used within the deed's text. *Vest*, 265 S.W.3d at 249 (citing *Franklin Fluorspar Co. v. Hosick*, 39 S.W.2d 665, 666 (Ky. 1931)). Thus, clear precedent among Kentucky cases clearly supports Judge Ingram's conclusion. What controls is the text of the deed itself – and the text of the 1907 deed clearly ties the conveyance to the northern boundary of the 1800-acre plat, wherever that happened to be.

The Heirs appear to be confused as to the preclusive effect of the Kentucky Court of Appeals decision in *Pennington*, as it pertains to this boundary dispute. Put simply, the *Pennington* decision definitively addresses the known unknown of the 1907 deed – the true location of the northern boundary of the 1800-acre patent. See *Pennington v. Cumberland Valley Land Co.*, 150 S.W. 655 (Ky. 1912). Judge Ingram's report and recommendation provides an excellent analysis of this century-old case. The *Pennington* decision did not modify any property boundaries; it merely determined and clarified the property boundaries as they had always been since the patent was first created in 1856. *Id*. at 655. Specifically, in making this determination,

4

the Court held that the 1800-acre land encompassed some 130 acres north of the ridge line after a survey was conducted. *Id*. Again, the Court did not move the boundary line – it merely clarified where the line always had been, regardless of the subjective beliefs of the local property owners. The *Pennington* Court also determined that the land south of this boundary line had been conveyed previously by Mr. Kelly to Cumberland Valley Land Co. in 1887. *Id*. Therefore, Kelly could not have validly conveyed title to land south of the 1800-acre patent boundary line to Mr. Hensley – nor anyone else – in 1907, because he had already sold it to someone else twenty years prior.

     A second, "quasi-objection" is raised in the text of the Heirs' objection as it pertains to the relevancy of the two overlapping patents – the 200-acre patent and the 1,800-acre patent – to the analysis.[3] Judge Ingram correctly concluded in the report and recommendation that the seniority of the 20-acre patent is not material to the analysis. As the Heirs correctly note, there were two patents of land which substantially overlapped. The 200-acre patent was created in 1843 and the 1800-acre patent was created 1856, and both were grants of land given by the Commonwealth of Kentucky to the same individual – James B. Turner Sr. Further, the Hensley Heirs are also correct that nothing in the Pennington decision purports to modify the parameters of the 200-acre patent. But none of these considerations play a role in the determination of the boundary of land granted to Loyd Hensley in 1907, as it pertains to this case. The question is solely: What was the property purportedly conveyed by the text of the 1907 deed to Mr. Hensley? A reading of the text clarifies that the land purported was by reference to the northern

---

[3] It is unclear from the framing of the Heirs' objection as to whether this argument is intended as a separate objection to Judge Ingram's report and recommendation, or whether it is presented as evidence in support of the central objection as to the transferor's intent. Regardless, the Court will address this argument as a separate, brief objection.

boundary of the 1800-acre patent, not the 200-acre patent. And the proper location of that boundary was addressed in *Pennington*.

While the complexity of this dispute is dilated by overlapping patents created nearly two centuries ago, this much is clear: The 1907 deed to Loyd Hensley references the northern boundary of the 1800-acre patent as the boundary of the property to be conveyed. The true location of the northern boundary of the 1800-acre patent, which may have been unclear at the time of the conveyance, was determined conclusively in the *Pennington* decision. The *Pennington* Court likewise concluded that the land south of this boundary line had been previously conveyed by Mr. Kelly to the Cumberland Valley Land Co. in 1887. In 1907, land south of the boundary could not be lawfully conveyed by Mr. Kelly to Mr. Hensley or anyone else. This Court is bound by the *Pennington* decision's conclusion.[4] As such, the deed must be interpreted in view of its unambiguous language, without consideration of extrinsic evidence as to what the parties thought they owned, or what they thought they conveyed, more than 100 years ago. Consequently, because no disputed issues of material fact remain, HBKY is entitled to judgment as a matter of law.

III

The record in this case is immense. Judge Ingram has provided a well-articulated report and recommendation which thoroughly sifts through and analyzes hundreds of pages of motions and supporting documentation. The objections raised by the Hensley Heirs do not present a valid basis for disturbing Judge Ingram's recommended disposition. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

---

[4] Judge Ingram's report and recommendation provides a lengthy analysis as to why issue preclusion bars relitigation of the *Pennington* decision, under the Kentucky issue preclusion standard set forth in *Yeoman v. Com., Health Pol'y Bd.*, 983 S.W.2d 459, 464-65 (Ky. 1998). The Hensley Heirs did not object to this analysis, and therefore we need not discuss it further here.

1. The Objections filed by the Hensley Heirs **[R. 1082; R. 1084; R. 1087]** are **OVERRULED**;

2. Judge Ingram's Report and Recommendation **[R. 1075]** is **ADOPTED** as and for the opinion of the Court;

3. HBKY's Motion for Summary Judgment **[R. 969]** is **GRANTED**;

4. The identical Motions for Summary Judgment filed by the Hensley Heirs **[R. 1041; R. 1042]** are **DENIED**;

5. The Hensley Heirs' Motion to Apologize, Provide Clarification, and Request Opportunity for Further Review **[R. 960; R. 961; R. 962; R. 963]** are **DENIED AS MOOT**;

6. HBKY's Motion to Strike the Hensley Heirs' "Objection to Report and Declaration of Mr. Ryan Johnson" **[R. 977; R. 978]** is **GRANTED**;

**7.** The Heirs' Second Motion to Apologize, Clarify, and Request Opportunity for Further Discussion **[R. 992; R. 993]** is **DENIED AS MOOT;**

8. HBKY's Motion to Strike the Remaining Heirs' Evidence **[R. 1009]** is **DENIED;**

9. HBKY's Motion for Leave to File an Exhibit **[R. 1014]** is **GRANTED;**

10. The Heirs' Motions for Leave to File a Sur-Reply on Summary Judgment **[R. 1023; R. 1026]** are **GRANTED**;

11. Each party **SHALL HAVE** up to and including **thirty (30) days** from the date of this Order to file supplemental briefing on the applicable costs, specifically whether "special reasons" exist for variance from the default rule on costs as outlined in the Recommended Disposition and Order.

This the 21st day of November 2025.

Gregory F. Van Tatenhove<br>
United States District Judge